FILED
United States Court of Appeals
Tenth Circuit

June 28, 2019

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM DOUGLAS WARWICK,

Defendant - Appellant.

No. 18-2116

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:16-CR-04572-WJ-1)

———————

Jerry A. Walz, Walz and Associates, P.C., Albuquerque, New Mexico, for Appellant.

Thomas J. Aliberti, Assistant United States Attorney (John C. Anderson, United States Attorney, with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Appellee.

———————

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **CARSON**, Circuit Judges.

———————

**TYMKOVICH**, Chief Judge.

———————

This appeal arises from a home search that led to the discovery of firearms possessed by William Warwick. After obtaining his oral consent, law

enforcement officials executed a search of Warwick's home, looking for a potentially dangerous fugitive. The officers found the fugitive hiding in a closet, and noticed several firearms as well. Warwick claimed the weapons as his own, and, after the officers learned he had a previous felony conviction, they asked him a second time for consent to search the house—this time to secure the firearms. Warwick signed a consent form, and agents discovered ammunition and illegal drugs in addition to the guns.

Warwick was charged with unlawful possession of firearms and drugs. Before the district court he argued the evidence was illegally obtained, claiming he never gave oral consent and that his written consent was not voluntary. The district court denied his motion to suppress the evidence, finding he gave valid consent to the searches. We AFFIRM.

## I. Background

Nine law enforcement agents approached Warwick's residence on the morning of August 3, 2016 to execute an arrest warrant for a gang-affiliated fugitive wanted for murder. FBI agents had received a tip that the fugitive was staying at Warwick's trailer. At approximately 11:40 AM, the agents parked two cars in front of the property and one in the back. Several agents drew their firearms, including one agent who stood beside a vehicle and trained his firearm on the windows above the front door while another officer knocked.

Warwick answered the knock and stepped outside. The officer at the door asked if someone named "Shauna" was there and Warwick said no.[1] Officer testimony indicated Warwick granted oral permission to search the residence at the agent's request. According to Warwick, however, the agents entered his residence from the rear while he was talking with the officer at the front door, and he did not grant oral consent to the search. The district court deemed Warwick's contrary testimony not credible, finding Warwick consented to entry and that no officer entered the residence prior to his consent.

Agents searched the residence for the fugitive and discovered her in a bedroom closet. While securing her, an officer observed two firearms in plain view in the closet. Officers continued a protective search of the residence in places where a person could hide, out of concern that other gang members might be hiding.

Meanwhile, an officer remained outside with Warwick. Their conversation was casual and friendly. Warwick was not permitted to enter the residence while the officers searched for the fugitive. Nevertheless, Warwick could move about the outside area. After the fugitive was taken into custody, another agent introduced himself to Warwick, explained the charges against the fugitive, showed him the wanted poster, and told him agents had seen firearms in the closet

---

[1] The fugitive had told Warwick her name was "Sally Martinez," so Warwick did not know her by the name Shauna.

where she was found. Warwick said he did not know the fugitive's true identity. He also volunteered that the firearms in the closet were his and offered his opinions on the Second Amendment. In total, Warwick was loosely monitored for approximately thirty-five minutes.

After the discussion, an officer ran Warwick's criminal history and determined he had been convicted of a felony. Warwick was then asked to sign a consent-to-search form authorizing a full search of the residence. The form read:

> **CONSENT TO SEARCH**
> 1.     I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of [my premises].
> 2.     I have been advised of my right to refuse consent.
> 3.     I give this permission voluntarily.
> 4.     I authorize these agents to take any items which they determine may be related to their investigation.

*United States v. Warwick*, No. 16-CR-4572 MCA, 2017 WL 3822076, at *5 (D.N.M. Aug. 30, 2017). The agent explained the form to Warwick, read each line to him, and told him he could limit or stop the search at any time. No threats were made and no guns were pointed at Warwick. Warwick alleges he replied "You've already searched anyway. What does it matter?" He also alleges he was told that if he signed the consent form, he would not go to jail. Officer testimony, however, indicated Warwick was friendly and agreeable, and that he replied "Well, you guys are already here anyway," and signed the form. The district court credited the officer testimony and deemed Warwick's contrary testimony not credible.

-4-

After Warwick signed the form, several officers searched the home and seized firearms, ammunition, methamphetamines, and drug paraphernalia. While an officer was outside with Warwick, he observed Warwick wore an empty gun holster. When asked about it, Warwick retrieved a slingshot and jokingly demonstrated a quick-draw action.

Warwick was later charged with multiple counts of knowingly possessing firearms and unlawfully, knowingly, and intentionally possessing methamphetamine with intent to distribute. Warwick moved to suppress the seized evidence, arguing he did not give oral consent to the first search and his written consent was not voluntary.

The district court denied the suppression motion. On the basis of credibility determinations, it concluded Warwick gave oral consent to the search. *Id.* at *2–3. The court also found Warwick "voluntarily consented to the search of his residence, both for [the fugitive] and later to a full search, and he was not coerced into consenting to the search." *Id.* at *7. Indeed, the court determined "that, despite the sizeable number of officers present and their prominent display of guns, including rifles, [Warwick] remained calm, confident, pleasant, and assertive from the time that he exited his home until the officers left." *Id.* Finally, the court found Warwick "understood the advisements within the consent-to-search form, including the right to refuse consent to either search" and

that the consent-to-search form was "sufficiently clear and unambiguous to outweigh any arguably coercive effect of the atmosphere of the encounter." *Id.*

## II. Analysis

Warwick contends the search of his home was unlawful for two reasons. First, he denies that he gave oral consent to law enforcement to enter the residence and search for the fugitive. Second, he contends his signature on the written consent form was obtained involuntarily.

The Fourth Amendment guarantees "the right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. For this reason, a warrant is generally required before an officer may search or seize persons or property. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The warrant requirement is subject to "a few specifically established and well-delineated exceptions." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

One such exception is that law enforcement may search a residence if the person in control of the residence voluntarily consents to the search. *Id.* at 222. This longstanding exception is deeply rooted in the common law and remains influenced by property rules regarding trespass. *See Georgia v. Randolph*, 547 U.S. 103, 111 (2006); *see also* Leonard W. Levy, *Origins of the Bill of Rights* 151 (1999) (William Pitt, in 1763: "The poorest man may, in his cottage, bid defiance

-6-

to all the forces of the Crown."); William Shakespeare, 1 *Henry IV*, Act II, sc. 4 (Hostess Quickly: "The sheriff and all the watch are at the door: they are come to search the house.  Shall I let them in?").

First we consider whether the district court clearly erred in finding Warwick orally consented to the search of his residence for a fugitive.  Then we address whether the district court clearly erred in finding Warwick voluntarily consented in writing to the full search of his residence.  We hold the district court did not abuse its discretion with either finding.

### A.  Oral Consent to Search

Warwick argues he did not orally consent to the search of his residence for the fugitive.  The officer at the door testified that, when asked for permission to search, Warwick replied "Go ahead."  Doc. 75 at 70.  The district court, assessing the conflicting accounts, determined the officer's testimony was credible and Warwick's was not.

This court is "loath to second-guess a district court's determination of a witness's credibility."  *United States v. Asch*, 207 F.3d 1238, 1243 (10th Cir. 2000).  Indeed, "when a case rests entirely on oral testimony, the district court's credibility determinations, if not internally inconsistent, can virtually never be clear error."  *United States v. Miller*, 84 F.3d 1244, 1250 (10th Cir. 1996).  Warwick says the district court's finding that he calmly acquiesced to the search is internally inconsistent with "the feverish situation that was unfolding," such as

the presence of multiple armed officers. *See* Aplt. Br. at 15. But Warwick himself testified under oath that he remained calm throughout the entire encounter. *See* Doc. 157 at 68. Moreover, Warwick is a 52-year-old man who had no difficulty asserting himself, knew his rights, and had prior contacts with law enforcement. Warwick fails to meet his burden of demonstrating that the district court's credibility determination is internally inconsistent. The district court's determination that Warwick consented is not clearly erroneous.

Recognizing the uphill battle he faces against the district court's credibility determination, Warwick pivots to a novel argument. For the first time on appeal, he argues that even if he *did* orally consent to the search, his oral consent was not voluntary. An argument not raised in the suppression motion, however, is waived. *United States v. Burke*, 633 F.3d 984, 987 (10th Cir. 2011) ("But none of these arguments was presented to the district court at the suppression hearing, and they are therefore waived on appeal."). Indeed, we are required under Federal Rule of Criminal Procedure 12(e) to decline review of any argument not made in a motion to suppress evidence and raised for the first time on appeal, unless good cause can be shown why the argument was not raised below. *See id.* at 987–88 ("[T]his waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion.").[2]

---

[2] Rule 12 was amended after our decision in *Burke*. But we recently held
(continued...)

Warwick does not attempt to show good cause. Instead, he relies on a "broad reading of the motion to suppress" and a specific sentence in the motion that argued "consent was involuntary." *See* Reply Br. at 4. That sentence, though not specifying whether it pertained to oral consent or written consent, is best read as referring to the voluntariness of Warwick's *written* consent because that is what the motion as a whole proceeded to argue. The district court, consistent with the briefing and testimony at the suppression hearing, correctly observed that Warwick "does not argue that [his oral] consent was coerced because [Warwick], instead, argues that it did not happen." *Warwick*, No. 16-CR-4572 MCA, 2017 WL 3822076, at *10.

Because Warwick failed to raise in district court the argument that his oral consent was involuntary, it is waived and we must decline review.

**B. Written Consent to Search**

Warwick acknowledges he gave agents written consent to search his residence, but argues his consent was not voluntary.

Consent is voluntary if the government establishes by "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)

---

[2](...continued)
the 2014 amendments "did not change the standard for appellate review, [and] *Burke* remains good law." *United States v. Bowline*, 917 F.3d 1227, 1236 (10th Cir. 2019).

(internal quotation marks omitted). "Whether a defendant's consent to search [is] voluntary is a question of fact, and the court considers the totality of the circumstances in making this determination." *United States v. Carbajal-Iriarte*, 586 F.3d 795, 799 (10th Cir. 2009). A signed consent form indicates voluntary consent. *Eidson v. Owens*, 515 F.3d 1139, 1147 (10th Cir. 2008). Other relevant considerations include

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012).

Warwick argues his written consent was involuntary for several reasons, including (1) the show of force at the beginning of the encounter, (2) the length of detention while the search progressed—about 35 minutes, and (3) his belief that refusal would be futile. Warwick says the district court clearly erred by treating the signed consent form, the manner of obtaining consent, and the evidence of friendly interaction between Warwick and the agents during this time as more probative of consent than those other factors. We disagree.

Any show of force dissipated soon after Warwick exited his home. Indeed, only one or two agents were present when Warwick signed the consent form. One

-10-

agent reviewed the consent-to-search form line-by-line with Warwick and explained he could limit the search or end the search at any time. The form itself states Warwick was advised of his right to refuse and that he gave permission "voluntarily." Warwick presents no credible evidence of coercive tactics such as physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone. To the contrary, the district court found Warwick was friendly and comfortable enough to engage the agents in small talk and jokes. This situation mirrors *United States v. Kimoana*, 383 F.3d 1215 (10th Cir. 2004), in which we affirmed the district court's finding of voluntary consent. There, we observed consent may "be voluntary where the officers approached the defendant with guns drawn, but then holstered them once the area was secured and before asking for consent to search." *Id.* at 1226.

With respect to the length of detention, we need not determine whether Warwick was in custody, because even someone who is detained can give valid consent. *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993) ("Valid consent may be given by a person being detained."). The district court aptly analogized Warwick's case to *United States v. Cruz-Mendez*, 467 F.3d 1260 (10th Cir. 2006), in which law enforcement obtained consent to search a residence from the defendant's girlfriend after approximately thirty minutes of contact, *see id.* at 1267. In *Cruz-Mendez*, we noted the trial court "explicitly found that the officers were not overly threatening or forceful" and "the length [of police contact] did

-11-

not necessarily make it overbearing." *Id.* Like the circumstances here, it was not "the equivalent of a lengthy interrogation in a bare room while the subject sits on a stool until her will is overborne." *Id.*

According to agent testimony, Warwick "relax[ed]" in front of his residence while being "loose[ly]" monitored by law enforcement—he was not "surrounded." Doc. 75 at 105. The period of loose monitoring had a valid, non-coercive purpose: officers were actively searching for a gang-affiliated fugitive and others potentially hidden in the residence. The period of monitoring was motivated by legitimate concern, given the circumstances, and the agents did not act unreasonably. *Cf. United States v. Strache*, 202 F.3d 980, 986 (7th Cir. 2000) (defendant who was handcuffed for twenty minutes before consenting nonetheless did so voluntarily); *United States v. French*, 974 F.2d 687, 693 (6th Cir. 1992) (forty-five minutes between stop and consent did not amount to coercion); *United States v. Tyson*, 360 F. Supp. 2d 798, 806 (E.D.Va. 2005) (consent given thirty minutes after officers arrived; finding of voluntariness supported by initial refusal to permit warrantless search).

Finally, Warwick relies on his statement that agents were "already in there anyway" to show he believed refusal to consent would be futile. The district court expressly rejected Warwick's version of his statement as unreliable and not credible. In fact, according to the district court, Warwick said, "Well, you guys are already here anyway." This statement suggests convenience of the parties, not

-12-

futility, motivated Warwick's consent. Meanwhile, only areas where a person could hide had already been searched (pursuant to the oral consent given earlier). And although the guns had been seen in plain view during the initial search for the fugitive, the firearms and drug evidence were not seized until Warwick gave written consent. Even if Warwick felt that withholding consent would be futile because officers had already seen the contraband, that feeling would not necessarily vitiate his unequivocal, specific, free, and intelligently given consent under the totality of the circumstances. *See Jones*, 701 F.3d at 1318.

Having assessed Warwick's arguments, we are persuaded the district court reasonably weighed the show of force, length of detention, and futility against the numerous other factors indicating valid consent. Under the totality of the circumstances, the district court did not clearly err in determining Warwick gave voluntary written consent to the residential search.[3]

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3] We need not address the government's alternative argument that the contraband inevitably would have been discovered since officers would have obtained a search warrant absent consent.