**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PATRICK STEIN,

    Defendant - Appellant.

No. 19-3043
(D.C. No. 6:17-CR-10045-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

In this direct criminal appeal, Defendant Patrick Stein challenges his

conviction for possession of child pornography, arguing the Government unlawfully

obtained the evidence on which this charge was based using a defective search

warrant.  Having jurisdiction under 28 U.S.C. § 1291, we reject Stein's arguments

and AFFIRM his conviction.

## I. BACKGROUND

After an eight-month investigation, the Federal Bureau of Investigation

("FBI"), in October 2016, arrested Stein and two other members of a militia group

---

[*] This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for conspiring to use a weapon of mass destruction against Muslim Somali immigrants living in southwestern Kansas. Agents then obtained a warrant to search Stein's home, where they seized, among other things, a computer and several thumb drives. While going through the contents of those electronic devices, agents came across images of child pornography. They stopped their search, obtained a second warrant authorizing the agents to search for child pornography and, in executing that second warrant, discovered up to 149 images of child pornography on the computer and two of the thumb drives seized from Stein's home.

Based on those images, the United States charged Stein in this case with one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Stein unsuccessfully moved in this case to suppress the evidence seized during the search of his home conducted pursuant to the first search warrant. He then conditionally pled guilty to possession of child pornography, reserving his right to appeal the denial of his suppression motion. See Fed. R. Crim. P. 11(a)(2). The district court sentenced Stein to forty-four months in prison on the child pornography conviction, to run consecutively to the 360-month sentence Stein received for his convictions stemming from the conspiracy to use a weapon of mass destruction.

## II. DISCUSSION

The focus of this appeal, then, is the validity of the warrant the FBI obtained to search Stein's home for evidence of the conspiracy to use a weapon of mass destruction. Summarizing, that warrant authorized FBI agents to search for and seize several categories of "fruits, evidence, and/or instrumentalities" of that criminal

2

activity, including tools and materials that could be used to make bombs, receipts for the purchase of bomb-making materials, bomb-making instructions, including those that are "computer-generated or stored," "[a]ny writing or printed word items or computer files . . . that may relate to terrorist individuals, explosives, bombs, terrorism, or terrorist attacks," information on individuals who may have contacted Stein and his co-defendants "by use of the computer or by other means for the purpose of conspiring to commit an act of terrorism," computers, electronic storage devices, and cell phones. (I R. 72-74.) In this appeal, Stein specifically challenges the warrant's authorization for agents to seize the computer and thumb drives on which the FBI discovered images of child pornography.

## A. Probable cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Stein first contends that there was no probable cause to support the search warrant's authorization to search his home for computers and other electronic storage devices in connection with the conspiracy to use a weapon of mass destruction.

### 1. Probable cause existed to believe Stein had a computer, it would be found in his home, and it would contain evidence related to the conspiracy to use a weapon of mass destruction

Stein asserts that the affidavit the FBI submitted to obtain the search warrant for Stein's home lacked sufficient information from which the magistrate judge issuing the warrant could have concluded that there was probable cause to believe

3

Stein possessed a computer or other electronic storage device, such devices would be found in his home, and they would contain information regarding the conspiracy to use a weapon of mass destruction.[1]  See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (5th ed. updated Oct. 2019) (noting probable cause to support a search warrant requires that there be "a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched"); see also United States v. Knox, 883 F.3d 1262, 1277 (10th Cir. 2018) ("In order for an affidavit to establish probable cause there must be a nexus between the [item] to be seized and the place to be searched" (internal quotation marks, alteration omitted)).

The magistrate judge's probable cause determination involved "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  We review de novo the district court's decision rejecting Stein's challenge to the search warrant.  See United States v. Wagner, 951 F.3d 1232, 1246 (10th Cir. 2020).  However, "we afford great deference" to the issuing magistrate judge's determination that there was probable cause to support the search warrant, asking on appeal "only whether, under the totality of the circumstances presented in the affidavit, the judge had a substantial

---

[1] In the district court, Stein characterized this problem, not as a lack of probable cause, but instead as the search warrant being overly broad.  The district court, however, treated this issue as one involving probable cause.  So does Stein on appeal.

4

basis for determining that probable cause existed." Id. (internal quotation marks, alteration omitted). In making that determination on appeal, we view the evidence in the light most favorable to the Government. See id. at 1243.

Doing so here, we conclude there was a substantial basis included in the supporting affidavit for the magistrate judge issuing the search warrant for Stein's home to determine that there was a fair probability that digital evidence of the conspiracy—including computer-generated or stored bomb-making instructions, computer files related to terrorist individuals, explosives, bombs, terrorism or terrorist attacks, and information on individuals who may have contacted Stein and his co-defendants for the purpose of conspiring to commit an act of terrorism—would be found in Stein's home.

The affidavit indicated that Stein's co-conspirators downloaded bomb-making instructions from the internet, watched bomb-making videos on YouTube, and used computers to research targets for their bombs. In addition, Stein procured fertilizer for the bomb and was assigned the task of acquiring a rock tumbler which was needed for the bomb-making. These activities could be expected to produce a digital trail. So, too, could Stein's surveillance of several possible targets, in light of the group's desire "to get photos and videos of the" possible target locations. (I R. 63 ¶ 23.)

The affidavit further indicated that Stein and his co-conspirators communicated by cell phones, often using the "phone-based application" Zello, which allowed the conspirators to speak to one another "as if their cellular telephones

5

were push-to-talk walkie-talkies." (I R. 51 ¶ 2 & n.1.) Further, in September 2016, Stein indicated that the group should "begin discussing project strategies via an encrypted mobile messaging application." (I R. 66 ¶ 29.)

> As the district court noted, the FBI's affiant
>
> identified many instances where Stein used electronic devices to communicate with his co-conspirators via the internet. While much of this activity was conducted on Stein's phone, it was reasonable to infer that some of the online activity could have been done on a computer, as well. Furthermore, the affidavit established that, based on the affiant's training and experience, such electronic communications are sometimes automatically downloaded to electronic devices with internet access and can be recovered from the device's "cache."

(I R. 407.) That might also be true of any digital surveillance photos Stein may have taken. See United States v. Reichling, 781 F.3d 883, 887 (7th Cir 2015) (recognizing that it is "common knowledge . . . that images sent via cell phones . . . may be readily transferred to other storage devices").

This information, viewed in the light most favorable to the Government, see Wagner, 951 F.3d at 1243, provided a substantial basis for the magistrate judge issuing the search warrant to determine that there was probable cause—a fair possibility—that Stein had digital evidence of the conspiracy. Furthermore, it was reasonable for the magistrate judge to infer, from this information, that there was a fair possibility that this digital evidence would be on electronic devices found in Stein's home. Cf. Peffer v. Stephens, 880 F.3d 256, 272 (6th Cir. 2018) (noting computers "are personal possessions often kept in their owner's residence and therefore subject to the [Sixth Circuit's] presumption that a nexus exists between an

6

object used in a crime and the suspect's current residence"). See generally United States v. Biglow, 562 F.3d 1272, 1279 (10th Cir. 2009) (considering "the nature of the evidence sought" and "all reasonable inferences as to where a criminal would likely keep such evidence").

The Government asks, in the alternative, that we affirm by applying United States v. Leon, 468 U.S. 897 (1984)'s good-faith exception. We do so, ruling that even if the magistrate judge's probable cause determination was wrong, an objective officer could still have relied in good faith on that probable cause determination. See id. at 922. In reaching that conclusion, we reject Stein's characterization of the warrant as "so lacking in indicia of probable cause to search for computers and other electronic storage devices as to render official belief in its existence entirely unreasonable." (Aplt. Br. 27).

## 2. **Franks** issue

Invoking Franks v. Delaware, 438 U.S. 154 (1978), Stein next argues that the FBI was able to obtain the search warrant authorizing the search of Stein's home for computers and other electronic devices only by intentionally or recklessly omitting four material facts from the affidavit submitted in support of the search warrant application.[2] See Harte v. Bd. of Comm'rs, 864 F.3d 1154, 1162 (10th Cir. 2017) (per curiam) (recognizing Franks applies to deliberate or reckless material omissions

---

[2] On the basis of this argument, the district court granted Stein a Franks hearing and, at Stein's suggestion, took judicial notice of the transcripts of the Franks hearing conducted in the weapons-of-mass-destruction prosecution.

in affidavit for search warrant, as well as deliberately or recklessly false statements included in affidavit). Those four omitted facts, Stein contended, show that he did not own or use a computer. Reviewing de novo, see United States v. Garcia-Zambrano, 530 F.3d 1249, 1254 (10th Cir. 2008), we conclude, as did the district court, that the four omitted facts were not material because, even considering the omitted information, there remained probable cause to believe digital evidence of the conspiracy to use a weapon of mass destruction would be found on electronic devices in Stein's home. See United States v. Herrera, 782 F.3d 571, 575 (10th Cir. 2015) ("If . . . the affidavit contains intentional, knowing, or reckless omissions, a court must add in the omitted facts and assess the affidavit in that light.").

The first omitted fact—that Stein told an FBI informant, in April 2016, that the informant should not make any plans on a computer because Stein did not want there to be any record—indicated only that, at least early in the conspiracy, Stein did not want the informant to use a computer to make a record of the conspiracy's plans, not that Stein was not himself using a computer. Furthermore, later in the conspiracy, Stein's two co-defendants, with his knowledge, used computers and accessed the internet to research bomb making and to look for possible targets for the conspirators' bombs.

The second and third omitted facts indicated that, in August 2016, Stein asked the informant if he knew anyone who had a "decent laptop they wanna get rid of" and, three days later, Stein told the informant that he had "been in desperate need of a computer for some time," because he was having to conduct all his online activity on

8

his phone. (I R. 35-36.) Stein argues that these two omitted statements established that he had no computer. But, as the district court recognized, these statements indicated that Stein was actively seeking to obtain a computer at that time, two months before his arrest and the search of his home. These two omitted facts, then, further support probable cause to believe that, by the time of his arrest, two months later, there was a fair probability that Stein had obtained the computer he desperately needed.

The fourth omitted fact was that, three weeks before Stein was arrested, the informant, in September 2016, while discussing with a third person the best way to contact Stein, stated that Stein does everything on his phone because he does not have a computer or internet. There is no indication, however, that this statement by the informant was based on anything other than what Stein had told the informant over one month earlier, in August 2016. This omitted fact did little to establish that Stein still had no computer at that time, three weeks before his arrest.

For these reasons, then, we agree with the district court that, even if the FBI had included these four omitted facts in its affidavit submitted in support of the search warrant, there was still probable cause to believe there would be digital evidence of the conspiracy on a computer or some other electronic storage device found in Stein's home in October 2016.

**B. Stein waived his challenges to the particularity of the warrant**

For the first time on appeal, Stein argues that the search warrant failed to state with sufficiently particularity "the types of electronic media or computer files that

9

fall within its scope," and failed "to limit the scope of the search for electronic devices and files to the crime charged," the conspiracy to use a weapon of mass destruction. (Aplt. Br. 19, 22.) Stein, however, never made these arguments to the district court.

Stein contends that he did preserve these arguments for appeal because he made a broad particularity argument in the district court. But in the district court, Stein argued instead that the search warrant was too broad because it allowed agents to seize all sorts of common household items that could be used to make a bomb, including, for example, glassware, stirring sticks, hammers, drill bits, staplers, batteries, screws, nails, staples and the like. That is substantively different than the particularity argument Stein now asserts for the first time on appeal, challenging the breadth of the search that the warrant permitted of the seized computers and other electronic devices. See United States v. Warwick, 928 F.3d 939, 944-45 (10th Cir. 2019) (rejecting contention that argument first raised on appeal was preserved by a broad reading of the suppression motion before the district court).

Rule 12, Fed. R. Crim. P., provides that a motion to suppress evidence must be made prior to trial, or it is waived, absent the defendant showing good cause for his failure to raise the issue pretrial in the district court. See Rule 12(b)(3)(C), (c)(3). That waiver rule also applies when, as here, a defendant makes a motion to suppress to the district court, but then raises a new suppression argument for the first time on appeal. See Warwick, 928 F.3d at 944. Here, Stein does not attempt to show good cause why he failed to make in the district court the particularity argument he now

10

asserts on appeal, challenging the breadth of the search of the seized electronic devices the warrant permitted. See id. We, therefore, cannot consider that new argument. See United States v. Bowline, 917 F.3d 1227, 1229-37 (10th Cir. 2019), cert. denied, 140 S. Ct. 1129 (2020).[3]

### III. CONCLUSION

For the foregoing reasons, then, we reject Stein's challenges to the search warrant that led FBI agents to discover child pornography on Stein's computer and thumb drives and AFFIRM his conviction for possession of that child pornography.

Entered for the Court

David M. Ebel
Circuit Judge

---

[3] A second reason why we cannot address Stein's particularity argument raised for the first time on appeal is that Stein entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), preserving only his right to appeal the denial of the suppression motion that he made to the district court and otherwise waiving his right to appeal. See United States v. White, 584 F.3d 935, 946-48 (10th Cir. 2009); United States v. Anderson, 374 F.3d 955, 957-58 (10th Cir. 2004).