**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CARL MARTIN ROSS, JR.,

    Defendant - Appellant.

No. 19-7008
(D.C. No. 6:18-CR-00034-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MATHESON** and **McHUGH**, Circuit Judges.

Carl Martin Ross appeals from the district court's denial of his motion to suppress evidence. Mr. Ross claims that the evidence in question was obtained in violation of the U.S. Constitution by an illegal search and an illegal interrogation. Mr. Ross also challenges the sentence that the district court imposed on him under the U.S. Sentencing Guidelines Manual ("U.S.S.G." or the "Guidelines"), particularly attacking the court's application of an upward adjustment for the use

---

[*]     This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of firearms in connection with another felony, *see* U.S.S.G. § 2K2.1(b)(6)(B), and its denial of a downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

# I

## A

At all times relevant here, Shandy Wegrzyn was the Deputy Sheriff of Pontotoc County, Oklahoma. In August 2017, she interviewed a suspect who informed her that Mr. Ross was selling methamphetamine. The next month, she learned from a member of local law enforcement that Mr. Ross was suspected in connection with a burglary of several stolen Honda four-wheeled all-terrain vehicles ("ATVs"). One of the ATVs was red and missing its left front mirror; another had an antler hole stuck through the back-left fender.

On October 7, 2017, Deputy Wegrzyn received a call from a local wildlife officer who had discovered an abandoned vehicle and horse trailer on a roadway in Pontotoc County. After determining that the vehicle belonged to Mr. Ross, Deputy Wegrzyn and other law enforcement officers traveled to Mr. Ross's residence to inquire about the vehicle. On the way to the scene of the abandoned vehicle, Deputy Wegrzyn observed Mr. Ross speeding away in another direction in a white vehicle. Soon after, Deputy Wegrzyn called an Ada, Oklahoma, police

officer and requested that he watch for Mr. Ross's white vehicle and pull him over for speeding, if possible. An Ada police officer later stopped Mr. Ross and arrested him for driving with an expired license.

As Deputy Wegrzyn and other law enforcement officers approached Mr. Ross's residence, they observed from the public county road a red ATV located on Mr. Ross's property. When Deputy Wegrzyn arrived at Mr. Ross's home, she attempted to conduct a "knock and talk," but no one answered the door. Aplt.'s App. at 35 (Findings & Rec., filed June 18, 2018). While on the property, Deputy Wegrzyn photographed the red ATV and a green ATV also located on the property. She sent the photos to one of her deputies, and that deputy consulted the individual who had reported the red ATV as stolen. The individual indicated that the red ATV depicted in Deputy Wegrzyn's photo belonged to him.

Deputy Wegrzyn began preparing an affidavit for a search warrant. While she was doing so, Mr. Ross's wife returned to the home and consented to a search of the residence. At this time, Deputy Wegrzyn was nearly finished with the warrant. But, out of an abundance of caution, the officers declined to enter the residence until a state court judge issued a search warrant.

**B**

The warrant authorized a search for the following property at Mr. Ross's residence:

3

1.    Articles of dominion and control[.]

2.    Stolen Property *including but not limited to* 2009 Honda Foreman Natural gear camo pattern fourwheeler, VIN# 1HFTE311794400379 with an antler hole stuck through the back left fender. 2004 Honda Automatic Rancher red in color, missing the left mirror.

3.    Drugs including *but not limited to* methamphetamine, baggies, scales, pay/owe sheets.

4.    Firearms[.]

Aplt.'s App. at 23–25 (Aff. of Shandy Wegrzyn, dated Oct. 7, 2017) (emphases added).

Deputy Wegrzyn also provided an affidavit. In pertinent part, it specified the following facts to support a probable cause finding:

> On 08/25/2017 I interviewed Kelley Miller. Post Miranda Kelley stated Marty Ross sold several ounces of Methamphetamine per week. Kelley said Marty sold Carl Ross methamphetamine and would sell him several ounces twice a week. Kelley and her husband Steve were purchasing methamphetamine from Carl[.]
>
> On 09/27/2017 I spoke with Deputy Good from Pushmataha County in reference to a burglary where two stolen Honda fourwheelers were taken. Deputy Good stated Russell Buttenschoen took the fourwheelers to Mary Ross's residence.
>
> On 10/06/2017 I interviewed Brandon Owens. Brandon stated Marty [Ross] had stolen four wheelers, a side by side[,] and a Kobota tractor on Marty's property in a barn without doors.

On 10/07/2017 I went to assist Wildlife Officer Ty Runyan at 3590 & 1705 in reference to an abandoned vehicle and stock trailer belonging to Marty Ross. We went to Marty Ross's residence, the above described residence, and I observed two four wheelers that matched the description of the four wheelers stolen from Pushmataha County. I observed a Rhino side by side in the front yard. I observed a firearm on the back of the Rhino along with ammunition.

On 10/07/2017 I spoke with Drug Task Force Agent Heath Miller. Miller stated back in December 2014 he had a concerned citizen contact him in reference to Marty Ross taking vehicles, tractors and fourwheelers to Zack Clark[']s house in the early morning hours. The concerned citizen believed they were operating a chop shop.

Miller stated later in December 2014 the Drug Task Force and the Pontotoc County Sheriff's [Office] executed a search warrant on Zack Clark[']s residence where approximately 1 pound of methamphetamine, two stolen trucks, stolen tractor and a stolen mower [were found].

One truck had been repainted and both vehicles had fake VIN's on them.

Miller stated in June 2015 Marty [Ross] was arrested in Murray County with ¼ pound of methamphetamine. Marty was coming from Oklahoma City and was headed to his residence in Pontotoc County.

In September 2016 Miller Interviewed Marty Ross. Ross told Miller he would go to Oklahoma City and pick up ½ pound of methamphetamine once a week and had been doing that for approximately a year. Ross said when he got the methamphetamine back to his residence he would deliver to other people.

5

*Id*. at 25–26. While conducting the search of Mr. Ross's residence, officers discovered stolen property, narcotics, and firearms, including a firearm suppressor.

Following the search, on October 9, 2017, Mr. Ross was arrested and charged in Pontotoc County district court for various state-law violations and hired a lawyer to defend him against those charges. The charges included trafficking in illegal drugs, possession of a firearm after a former felony conviction, possession of a firearm during the commission of a felony, knowingly concealing stolen property, and possession of a stolen vehicle.

## C

Nearly a month after the search, Deputy Wegrzyn contacted Special Agent Lucas Keck of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") about the discovery of the firearm suppressor—a federal crime with no analogous state-law criminal offense in Oklahoma. In December, Special Agent Keck and Special Agent John Butler conducted a forty-five minute, recorded interview of Mr. Ross without his counsel present. At this time, the federal government had not filed any charges against Mr. Ross. Agent Keck "assumed [Mr. Ross] had counsel" in connection with the state proceedings against him. Aplt.'s App. at 39. But, during the interview, Agent Keck did not advise Mr. Ross of a right to counsel because he "believed that so long as state charges were not filed on the

6

suppressor, he could interview [Mr. Ross] without counsel." *Id*. While most of his questions focused on the suppressor, Agent Keck did ask Mr. Ross about each gun found in his home.

On March 14, 2018, a federal grand jury returned an indictment against Mr. Ross, charging him with two crimes arising from the October 7, 2017, search of his residence. Count One charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two charged him with possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871.

## II

## A

Mr. Ross filed a motion to suppress the items seized during the search and the contents of the statements he made to the ATF agents. He argued that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures and that the interview by the ATF agents violated his Sixth Amendment right to counsel. The magistrate judge issued written findings and recommended that the motion be denied. The district court judge "affirmed and adopted" the magistrate judge's findings as its own and then denied the motion to suppress. Aplt.'s App. at 80 (Dist. Ct. Order, filed July 12, 2018).

More specifically, in denying Mr. Ross's Fourth Amendment claim, the district court noted that the magistrate judge had found that "Deputy Wegrzyn and the other officers observed at least the stolen red Honda four wheeled vehicle from the county roadway without entering the residence or the curtilage of the residence." *Id*. at 76. Recognizing that Mr. Ross hotly disputed this point, the court noted that "[w]hether the officers observed the stolen four wheelers from a public or private road does not change the outcome in this case." *Id*. at 79. This was so, reasoned the court, because there were "sufficient facts in the Affidavit to support a valid search warrant beyond the officers' seeing the stolen four wheelers on [Mr. Ross's] property." *Id*. Further, in denying Mr. Ross's Sixth Amendment claim, the district court found that ATF Agent Keck "was investigating the illegal possession of a firearm suppressor" for which there was "no state charge," and thus Mr. Ross's Sixth Amendment right to counsel had not attached. *Id*.

Mr. Ross later filed a supplemental motion to suppress, again challenging the validity of the search, but the district court denied that motion as well. Mr. Ross then waived his right to a jury trial and entered into a pretrial stipulation with respect to certain elements of the charged offenses. Notably, as part of this stipulation, Mr. Ross did not admit—as the indictment charged—that he "knowingly possess[ed]" the firearms at issue in the offenses. Aplt.'s App. at

8

11–12 (Indictment, filed Mar. 14, 2018); *see id*. at 90–91 (Stipulations, filed Aug. 28, 2018). At trial, the district court refused to exclude the evidence Mr. Ross previously had sought to suppress and, moreover, determined that Mr. Ross's wife voluntarily consented to the search of the house. Ultimately, the district court found Mr. Ross guilty of both counts—possessing a firearm while a felon and possessing an unregistered firearm, that is, the suppressor.

**B**

The Presentence Report ("PSR") calculated a four-level increase of Mr. Ross's offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for use or possession of a firearm or ammunition in connection with another felony offense—here, knowingly concealing stolen property.[1] The PSR also concluded that Mr. Ross was *not* entitled to an adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, reasoning that, though he was not automatically barred from the adjustment because he went to trial, this was not a situation "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Aplt.'s App. at 355 (Presentence Report, Addendum,

---

[1] The U.S. Probation Office used the 2016 edition of the Guidelines in calculating Mr. Ross's sentence. Because Mr. Ross does not challenge this decision of the U.S. Probation Office, we also rely on the 2016 edition in our analysis.

filed Dec. 10, 2018). These and other adjustments yielded a total offense level of twenty-eight. An offense level of twenty-eight combined with a category II criminal history resulted in a Guidelines advisory sentencing range of 87 to 108 months of imprisonment.

Mr. Ross objected to both the § 2K2.1(b)(6)(B) four-level increase and to the conclusion that he was not entitled to an adjustment for acceptance of responsibility. At sentencing, the district court rejected Mr. Ross's arguments in support of his objections. In doing so, the court found by a preponderance of the evidence that the four-level enhancement was appropriate because, as in *United States v. Basnett*, 735 F.3d 1255 (10th Cir. 2013), "[t]he sheer volume of stolen property, which included stolen firearms," as well as their accessibility, "provide[d] a good inference that the firearms would be used to protect the defendant and the stolen property." Aplt.'s App. at 315 (Tr. Sentencing Hr'g, dated Feb. 27, 2019). The court also found by a preponderance of the evidence that Mr. Ross was not entitled to a reduction for acceptance of responsibility. The court acknowledged that Mr. Ross had not maintained his innocence and had proceeded to trial solely with the aim of reasserting his challenge to the court's ruling on his pretrial suppression motion. But the court noted that the latter reason for going to trial did not equate to the kinds of reasons for going to trial that the Guidelines (*see* U.S.S.G. § 3E1.1 cmt. n.2) expressly note do not

disqualify a defendant from the reduction—specifically contesting the constitutionality of a criminal statute or the legality of applying the statute to the defendant's conduct. And the court reasoned that, though Mr. Ross waived a jury trial, he still required the government to carry its burden of proof at the bench trial.

Therefore, based on the foregoing, the court rejected Mr. Ross's § 2K2.1(b)(6)(B) challenge and denied him an acceptance-of-responsibility downward adjustment. The district court sentenced Mr. Ross to eighty-seven months of imprisonment, and he timely appealed.

## III

Mr. Ross raises four issues on appeal. First, Mr. Ross contends that the searches of his property violated his Fourth Amendment rights. Second, Mr. Ross claims that his subsequent interview with ATF Special Agent Keck violated his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and his Sixth Amendment right to counsel. Mr. Ross's final two challenges focus on the district court's application of the U.S. Sentencing Guidelines. Specifically, Mr. Ross contends that the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was clearly erroneous and that he was entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

11

For the reasons discussed below, we reject Mr. Ross's arguments and affirm the district court's judgment.

**A**

Mr. Ross first challenges the search of his property as "an illegal warrantless search." Aplt.'s Opening Br. at 16. This argument concerns two separate alleged searches that occurred before Deputy Wegrzyn received a warrant: that is, the attempted knock-and-talk and the alleged search of the ATVs.

"In reviewing the decision of a district court to deny a motion to suppress, 'we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.'" *United States v. Hatfield*, 333 F.3d 1189, 1193 (10th Cir. 2003) (quoting *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir.1999)). "Whether consent was voluntarily given is a question of fact we review for clear error." *United States v. Harrison*, 639 F.3d 1273, 1277 (10th Cir. 2011) (citing *United States v. Silva-Arzeta*, 602 F.3d 1208, 1213 (10th Cir. 2010)). "We review de novo legal issues in a district court's decision on a motion to suppress," *United States v. Meadows*, 970 F.3d 1338, 1340 (10th Cir. 2020) (citing *United States v. Easley*, 911 F.3d 1074, 1079 (10th Cir. 2018)), including "the ultimate determination of reasonableness under the Fourth Amendment,"

*United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011) (quoting *United States v. Eckhart*, 569 F.3d 1263, 1270 (10th Cir. 2009)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Houses," for Fourth Amendment purposes, includes a home's curtilage, and a home's "front porch is the classic exemplar" of curtilage. *Florida v. Jardines*, 569 U.S. 1, 7 (2013). Yet a knock-and-talk "is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013) (quoting *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir.2006)). We have routinely upheld "the constitutionality of knock-and-talks, based on the implied license recognized in *Jardines* that allows police officers, like members of the public, to approach the front door of a home and knock." *United States v. Carloss*, 818 F.3d 988, 994 (10th Cir. 2016); *see also Kentucky v. King*, 563 U.S. 452, 469 (2011) ("[W]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). After all, "[t]he home's occupant remains free to terminate the conversation or even to avoid it altogether by not opening the door." *Carloss*, 818 F.3d at 992 (citing *King*, 563 U.S. at 469–70)).

We do not reach the merits of Mr. Ross's challenge to the knock-and-talk in this case: Mr. Ross has waived the opportunity to challenge it. Before the district court, Mr. Ross challenged the permissibility of the knock-and-talk and objected to the magistrate judge's report and recommendation. On appeal, however, Mr. Ross does not challenge the knock-and-talk in his opening brief. Indeed, the only mention of the knock-and-talk appears in his reply brief. *See* Aplt.'s Reply Br. at 6 (claiming law enforcement "fabricate[d] a story about a 'knock and talk' using legal jargon . . . . to conduct an illegal search no matter how thin the justification"); *see also id*. at 3 ("[T]his suggestion of a 'knock and talk' is a lawyer contrived device to evade the facts [of] what actually occurred."). As such, the argument comes too late, and we decline to consider it. *See, e.g.*, *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("In this Circuit, we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised . . . in an appellant's opening brief.").

We turn to law enforcement's alleged search of the ATVs at Mr. Ross's residence. Mr. Ross contends that, contrary to the magistrate judge's finding, the officers did not observe even the red ATV from the public road and that Deputy Wegrzyn impermissibly entered onto the curtilage in examining the ATVs in

14

furtherance of her investigation.  In this regard, Mr. Ross contends that Deputy

Wegrzyn's conduct is akin to the officer in *Collins v. Virginia*, 138 S. Ct. 1663

(2018)—conduct that the Supreme Court declared to be in violation of the Fourth

Amendment.

However, like the district court,[2] we ultimately have no need to determine

whether law enforcement's observations of the ATVs ran afoul of *Collins* or

otherwise violated the Fourth Amendment.  That is because, irrespective of any

such violation, Deputy Wegrzyn's affidavit included sufficient facts to provide

probable cause for a search of Mr. Ross's residence—including the area where the

ATVs were located—even when all of the information concerning law

enforcement's on-site observations of the ATVs is disregarded.  *See United States

v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (affirming "the district court's ruling

that the warrants here were based on probable cause without regard to the prior

warrantless searches"); *United States v. Cusumano*, 83 F.3d 1247, 1250 & n.2

(10th Cir. 1996) (en banc) ("We do not decide the constitutionality of the

warrantless use of the thermal imager to scan Defendants' residence because any

such decision is unnecessary to a resolution of Defendants' appeals.  Any decision

---

[2]     The district court put the point this way:  "Whether the officers observed the stolen four wheelers from a public or private road does not change the outcome in this case. . . . [T]here are sufficient facts in the Affidavit to support a valid search warrant beyond the officers' seeing the stolen four wheelers on Defendant's property."  Aplt.'s App. at 78.

we might reach on that question would not alter the outcome of these appeals. Detective Bohlig's affidavit was sufficient to establish probable cause absent *any* consideration of the results of the thermal imager scan."); *see also United States v. Reed*, 921 F.3d 751, 755 (8th Cir. 2019) ("Evidence should not be excluded . . . based on a constitutional violation unless the illegality is at least a but-for cause of obtaining the evidence." (omission in original) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007))); *cf. United States v. Awadallah*, 349 F.3d 42, 69 (2d Cir. 2003) (noting that "even after excising the information obtained in violation of the Fourth Amendment and emending the four misleading statements discussed above, 'there remains a residue of independent and lawful information sufficient to support probable cause'" (quoting *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000))). We elaborate on our conclusion concerning the sufficiency of the affidavit below. But because it is sufficient, Mr. Ross's challenge to the alleged warrantless search of the ATVs is unavailing.

**B**

Mr. Ross challenges the affidavit and the warrant. The magistrate judge determined that the affidavit for the warrant "justif[ied] the issuance of the warrant independent of any of the items found on the curtilage of Defendant's residence." Aplt.'s App. at 43. The district court agreed, and so do we. Mr.

16

Ross challenged the affidavit in the proceedings below, but he never challenged the sufficiency of the warrant until now on appeal.

**1**

Mr. Ross claims that the affidavit for the warrant that Deputy Wegrzyn prepared was "wholly inadequate to provide the necessary basis for a finding of probable cause." Aplt.'s Opening Br. at 16. He claims that the affidavit contained a "shotgun recitation of dis-jointed assertions . . . reple[te] with speculation, innuendo and surmise." *Id*. at 16–17. The affidavit also allegedly "contained statements which were vague" and "hearsay within hearsay without any attempt to verify or vouch for the veracity of the claim." *Id*. at 8–9.

We disagree. We hold instead that the affidavit sufficiently supplied probable cause for the search warrant. An affidavit provides probable cause for a search warrant if "the totality of the information it contains establishes the 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005) (quoting *United States v. Rice*, 358 F.3d 1268, 1274 (10th Cir. 2004)). At bottom, an affidavit must provide a magistrate judge "with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *accord United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (explaining that an affidavit must show "a nexus between . . . suspected criminal

17

activity and the place to be searched" (omission in original) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)).

The affidavit here was adequate to satisfy this standard. This is true even when no reliance is placed on the affidavit's limited averments recounting Deputy Wegrzyn's observations at Mr. Ross's home of the two suspected stolen four wheelers. The affidavit contained contemporaneous reports from identifiable individuals—including a law enforcement officer from Pushmataha County, Oklahoma—concerning illegal trafficking in narcotics by Mr. Ross and, more importantly, his storage of stolen property at his residence. In this connection, the magistrate judge reasoned the following: "The affidavit cites to narcotics activity and allegations of theft involving Defendant and Defendant's residence and outbuildings[,] likely within the curtilage of the residence[,] which references sources outside of the evidence developed by Deputy Wegrzyn during the visit to Defendant's residence." Aplt.'s App. at 43. The district court adopted this reasoning, and we see no error in it. In short, the affidavit contained ample specific information from identifiable individuals creating a sufficient "nexus" between stolen items and Mr. Ross's home. *Roach*, 582 F.3d at 1200. Thus, the issuing judge had a "substantial basis" to conclude that the search would uncover evidence of such wrongdoing. *Gates*, 462 U.S. at 242. We therefore reject Mr. Ross's challenge to the affidavit.

18

**2**

Mr. Ross also brings a related challenge to the sufficiency of the warrant. He claims that the scope of the warrant was impermissibly broad. In particular, he points to the two "not limited to" qualifications in the warrant:

> 2.  Stolen Property *including but not limited to* 2009 Honda Foreman Natural gear camo pattern fourwheeler, VIN# 1HFTE311794400379 with an antler hole stuck through the back left fender. 2004 Honda Automatic Rancher red in color, missing the left mirror.
>
> 3.  Drugs including *but not limited to* methamphetamine, baggies, scales, pay/owe sheets.

Aplt.'s App at 77–78 (emphases added). According to Mr. Ross, "[w]hen the 'not limited to' language is inserted[,] the warrant is not [c]onstitutionally proper as the particularity clause has been vitiated." Aplt.'s Opening Br. at 18.

We need not consider the merits of Mr. Ross's challenge to the warrant for two independent and distinct reasons. First, and most importantly, under Rule 12 of the Federal Rules of Criminal Procedure, Mr. Ross has waived this argument. In the proceedings below, he only attacked the sufficiency of the affidavit and *not* the scope of the warrant. *See* Fed R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion [including a motion to suppress], the motion is untimely."). To be sure, we could consider Mr. Ross's objection to the warrant if he "show[ed] good cause" for his failure to raise the objection

19

before the district court; yet, he has failed to do so. *Id.*; *see United States v. Warwick*, 928 F.3d 939, 944 (10th Cir. 2019) ("[W]e are required under Federal Rule of Criminal Procedure 12(e) to decline review of any argument not made in a motion to suppress evidence and raised for the first time on appeal, unless good cause can be shown why the argument was not raised below."); *see also United States v. Burke*, 633 F.3d 984, 987 (10th Cir. 2011) ("At no time did [Defendant] argue the *affidavit* was insufficient to provide the magistrate with probable cause. That contention appears for the first time on appeal, and we thus consider it waived.").

And, second, Mr. Ross's argument is unavailing on the merits because Mr. Ross's wife provided—as the district court plausibly found—voluntary consent to law enforcement to search their residence. *See Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (holding that warrantless searches of a home are valid if done "with the voluntary consent of an individual possessing authority . . . [either] the householder against whom evidence is sought, *or a fellow occupant* who shares common authority over property, when the suspect is absent.") (internal citations omitted) (emphasis added). And the record does not indicate—nor does Mr. Ross argue—that Ms. Ross placed any limits on the scope of her consent. *See, e.g.*, *United States v. Pikyavit*, 527 F.3d 1126, 1131 (10th Cir. 2008) ("'[A] defendant's failure to limit the scope of a general authorization to search' is a

factor indicating the search was within the scope of consent." (quoting *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir.1999))); *United States v. West*, 219 F.3d 1171, 1177 (10th Cir. 2000) ("The scope of the consent to search is limited by the breadth of the consent given."). Therefore, even if the scope of the warrant were impermissibly broad—by virtue of the inclusion of the "not limited to" language—it would not have affected whether a complete, reasonable search of the residence was authorized and permissible. Consequently, even if Mr. Ross had not waived his warrant challenge (but he has), he could not secure relief.

\* \* \*

In sum, we reject Mr. Ross's arguments under the Fourth Amendment.

**C**

Mr. Ross next alleges violations of his Fifth and Sixth Amendment rights arising from his December 18, 2017, interview with ATF Special Agent Keck. The Fifth Amendment claim alleges a *Miranda* violation. Aplt.'s Opening Br. at 20–22. Mr. Ross did not raise this claim below. In addition, Mr. Ross brings a Sixth Amendment claim, contending that Agent Keck—by conducting the interview without his attorney present—violated his Sixth Amendment right to counsel. *Id*. at 21–23. We address these Fifth and Sixth Amendment claims in turn.

**1**

Mr. Ross brings a general claim that ATF Special Agent Keck violated his *Miranda* rights. Aplt.'s Opening Br. at 20–22. This argument is waived, however, because it was never raised before the district court, and Mr. Ross fails to demonstrate to us good cause for his failure to do so. *See, e.g.*, *Warwick*, 928 F.3d at 944.

**2**

Mr. Ross next alleges that Agent Keck's interview violated his Sixth Amendment right to counsel. Mr. Ross insists that Agent Keck's assistance was "solicited by the Pontotoc County Sheriff's Office" and that Agent Keck questioned Mr. Ross at length about *all* of the firearms seized from his residence—not just the firearm suppressor, which provided the basis for a federal charge. Aplt.'s Opening Br. at 21. Mr. Ross argues that Agent Keck was aware that state charges had been filed against Mr. Ross and assumed that Mr. Ross was represented by counsel based on those charges. *Id*.

The Sixth Amendment right to counsel "attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing." *United States v. Gouveia*, 467 U.S. 180, 185 (1984). The right to counsel, however, is "offense specific." *Texas v. Cobb*, 532 U.S. 162, 167 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)); *accord United States v. Mullins*, 613 F.3d 1273, 1286 (10th Cir. 2010).

Consequently, Mr. Ross's claim is without merit because he fails to show that his Sixth Amendment right had attached with respect to any of the federal charges before us, nor does he attempt to show how any Sixth Amendment right attaching to his state-law charges could conceivably affect the Sixth Amendment status of his subsequent federal charges.

More specifically, at the time of Agent Keck's interview, Mr. Ross had not been charged with any federal offense, let alone an offense involving his possession of an unregistered suppressor. Consequently, Mr. Ross cannot establish that his Sixth Amendment right to counsel had attached with respect to the federal offenses before us when Agent Keck interviewed him. Therefore, Agent Keck did not violate his Sixth Amendment rights as to those offenses.

**D**

Mr. Ross next argues that the district court made two errors in its application of the U.S. Sentencing Guidelines. First, he contends that the district court erred in applying a special offense characteristic under U.S.S.G. § 2K2.1(b)(6)(B). Second, he claims that the district court wrongly denied his request for a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

23

**1**

Mr. Ross insists that there was "no factual nor legal basis" in the record to apply a special offense characteristic under U.S.S.G. § 2K2.1(b)(6)(B). Aplt.'s Opening Br. at 24. He contends that the statements justifying the enhancement "appeared solely as a conclusion in the presentence report." *Id.*

Section 2K2.1(b)(6) permits a sentencing enhancement for possession of firearms in connection with a separate felony. *See* U.S.S.G. § 2K2.1(b)(6). In particular, the provision advises the court to impose a four-level enhancement if the defendant

> used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . .

*Id.* The corresponding commentary note indicates that a district court can apply the enhancement if the weapon "has the potential of facilitating another felony offense or another offense." § 2K2.1(b)(6) cmt. n.14(B). And "[c]ommentary interpreting the sentencing guidelines is binding on the federal courts unless it violates the Constitution or a federal statute, or is inconsistent with the guideline it interprets." *United States v. Farnsworth*, 92 F.3d 1001, 1007 (10th Cir. 1996).

Because Mr. Ross challenges the district court's application of the Guidelines, "we must decide whether the finding constituted clear error."

*Basnett*, 735 F.3d at 1259 (citing *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998)).  Here, Mr. Ross has not met his burden of showing that the enhancement was clearly erroneous.  The considerable amount of stolen merchandise on Mr. Ross's property provided a plausible factual basis for the court to find that the simultaneous presence of the firearms had the potential to facilitate Mr. Ross's stolen-property offense.  *See id.* at 1262 ("From the volume of stolen property, guns, and ammunition at the home, the sentencing judge could reasonably infer that Mr. Basnett kept the guns in connection with his transportation of stolen property . . . [and] that he could use them to safeguard his stash of stolen merchandise.").

**2**

Mr. Ross also claims that he was entitled to a two-level reduction under § 3E1.1 because he "entered into a pretrial stipulation which acknowledged the essential elements of guilt as to the charges."  Aplt.'s Opening Br. at 26.  He insists that, because he executed a waiver of jury trial, "there were no facts to be determined" regarding his guilt.  *Id.*  He therefore argues that "it was an abuse of discretion to deny this two-level reduction."  *Id.* at 27.

The Guidelines permit a two-level sentencing reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  Generally, we review a district court's refusal to apply this two-level

reduction under the deferential clearly erroneous standard.  *See United States v. Lynch*, 881 F.3d 812, 819 (10th Cir. 2018).  And, because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (quoting U.S.S.G. § 3E1.1 cmt. n.5).

Ordinarily given binding effect, *see Farnsworth*, 92 F.3d at 1007, the Guidelines commentary is particularly instructive concerning the application of this adjustment in a circumstance where the defendant elects to go to trial:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1. cmt. n.2.

Here, Mr. Ross cannot show that the district court's denial of his request for a downward adjustment for acceptance of responsibility was clearly erroneous. Though the court acknowledged that Mr. Ross "did not maintain his innocence" and went to trial "solely to challenge the ruling of his pretrial suppression motion related to the search," it noted that his trial was "not the result of a constitutional challenge to a statute or the applicability of a statute to his conduct." Aplt.'s App. at 317. That is, the court effectively reasoned that Mr. Ross's decision to go to trial did not resemble the scenario that the Guidelines commentary envisioned as being compatible with the granting of the enhancement. *See* U.S.S.G. § 3E1.1. cmt. n.2.

Further, the court noted that Mr. Ross—whatever his intentions in going to trial—"still put [the government] to the burden of proof." Aplt.'s App. at 317. Notably, in this regard, as the government correctly stressed before the district court, Mr. Ross's pretrial stipulation did not address all of the elements of his charged offenses; more specifically, it was silent concerning his knowing possession of the firearms. *See id*. at 309 (Gov't Resp. to Def.'s Sentencing Mem. and Req. for Downward Variance, filed Dec. 31, 2018) ("The only issue left [after the pretrial stipulation], is the issue commonly contested at trial, the issue of possession, an essential element of the crime."); *see also id*. at 288–90 (Tr. of Nonjury Trial, dated Aug. 28, 2018) (the district court observing that the

27

stipulation "basically disposed of" and "take[s] care of" all of the elements of the two charged offenses except for knowing possession).  Consequently, the government was obliged—at the very least—to establish that factual element beyond a reasonable doubt at trial.

In sum, the district court did not clearly err in finding that the facts of this case did not demonstrate that Mr. Ross accepted "full responsibility" for his crimes; therefore, he did not merit the downward adjustment of § 3E1.1.  *United States v. Portillo-Valenzuela*, 20 F.3d 393, 395 (10th Cir. 1994) ("The reduction is simply a reward for those who take *full responsibility*." (emphasis added)).

**IV**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge


28