FILED
United States Court of Appeals
Tenth Circuit

April 13, 2026

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES NEMETH,

Defendant - Appellant.

No. 24-8049
(D.C. No. 2:24-CR-00012-SWS-1)
(D. Wyo.)

_____

ORDER AND JUDGMENT*
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

The government indicted James Nemeth for possessing methamphetamine with intent to distribute and for possessing a firearm as a felon. These charges were based on evidence seized from Mr. Nemeth's motel room after a trained narcotics dog alerted at his motel room door. Mr. Nemeth moved to suppress the evidence. He also moved to dismiss the felon-in-possession charges. The district court denied those motions, and

_____

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Nemeth pleaded guilty under a conditional plea agreement. He now appeals. As to his motion to suppress, he contends law enforcement violated his reasonable expectation of privacy in his motel room under the Fourth Amendment and *Katz* v. *United States*, 389 U.S. 347 (1967), when officers used a drug dog to sniff his motel room door from the public hallway. As to his motion to dismiss the indictment, he argues 18 U.S.C. § 922(g)(1) violates the Second Amendment. Neither argument requires reversal.

We do not reach the merits of Mr. Nemeth's Fourth Amendment challenge because he failed to raise before the district court the particular argument he now advances on appeal. And we must reject his Second Amendment challenge because it is foreclosed by our circuit precedent, as Mr. Nemeth acknowledges. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I

## A[1]

Based on a tip from a confidential informant, law enforcement suspected Mr. Nemeth was selling controlled substances out of his room at

---

[1] We draw these background facts from the appellate record, including the district court's order denying the motion to suppress. *See United States* v. *Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) ("In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous[.]" (internal quotation marks omitted)).

the Super 8 Motel in Evansville, Wyoming. Casper Police Department Officer Justin Price conveyed this information to Natrona County Sheriff's Deputy Dexter Bryant. Deputy Bryant and his trained narcotics-detection dog, Duke, drove to the Super 8 Motel "to conduct a free-air sniff of the parking lot and interior motel hallways."[2] RI.196.

Upon arrival, Deputy Bryant identified Mr. Nemeth's Toyota Rav 4 parked near the Super 8 Motel. He then "deployed Duke for a free-air sniff of the Toyota." RI.197. Ultimately, "Duke indicated to the presence of controlled substances on the back driver's side of the vehicle by sitting and pointing his nose at the door." RI.197.

Deputy Bryant informed Officer Price of Duke's "positive indication" on Mr. Nemeth's vehicle. RI.197. Officer Price and two other Casper Police Department officers joined Deputy Bryant at the Super 8 Motel. Deputy Bryant received permission from a manager at the motel to conduct a "free-air sniff" of the first-floor hallway because the rooms "may be accessed only

---

[2] The parties do not dispute the precise meaning, scope, or duration of a so-called "free-air sniff." Rather, they appear to mutually understand this term as encompassing the deployment of a drug dog for the purpose of detecting contraband. And we previously have referred to a drug dog's act of sniffing an area to detect the odor of contraband as a "free-air sniff." *See, e.g.*, *United States* v. *Mayville*, 955 F.3d 825, 828 (10th Cir. 2020) (noting a trooper and his canine "conduct[ed] a free-air sniff around the car").

through internal hallways."[3] RI.197. Meanwhile, Officer Price determined from the motel registry that Mr. Nemeth was staying in Room 140. Officer Price did not inform Deputy Bryant of the room number associated with Mr. Nemeth. Nor did Deputy Bryant otherwise know Mr. Nemeth's room number.

Deputy Bryant took Duke to the first floor of the motel. The first floor contains Rooms 105 through 155, and all rooms are accessible from a common hallway. The Casper police officers followed Deputy Bryant "[a]s Duke sniffed from Room 105 to Room 155." RI.198. Duke's alert "peaked at Room 140," where he "sniffed the bottom of the door, up the seam, and on the door handle." RI.198. During a "second pass" of Room 136 to Room 142, Duke again "alerted on Room 140 by laying down and scratching at the door[.]" RI.198.

Based in part on Duke's alert, Officer Price obtained a warrant to search Room 140, Mr. Nemeth's person, and Mr. Nemeth's Toyota Rav 4.

---

[3] Mr. Nemeth suggested in his motion to dismiss that the Super 8 Motel property manager "actually *denied* officers consent to let [Duke] peruse the hotel hallways . . . . It was only after those denials that officers forced the clerk to call the owner of the company that owns the hotel, who indicated 'I guess, but they aren't allowed to enter any rooms.'" RI.101. At the suppression hearing, defense counsel conceded law enforcement "did have consent to deploy Duke in that hallway." RIII.268. On appeal, Mr. Nemeth does not challenge the district court's factual finding that officers had permission to deploy Duke in the hallway.

Law enforcement executed the warrant and found Mr. Nemeth alone in the motel room along with nine "small, clear, plastic baggies of suspected methamphetamine" inside a shopping bag; a syringe "loaded" with a clear liquid that tested presumptively positive for methamphetamine; about $3,868 in cash; a loaded Springfield handgun; and "various drug paraphernalia." RI.20–21. The total weight of the small plastic baggies containing suspected methamphetamine was "approximately 140 grams without packaging[.]" RI.22. The substance in the baggies tested presumptively positive for methamphetamine.

## B

A federal grand jury indicted Mr. Nemeth on one count of possession with intent to distribute fifty grams or more of a mixture of substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and two counts of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[4] Mr. Nemeth filed two pretrial motions relevant to this appeal. He first moved to dismiss the felon-in-possession counts, arguing that § 922(g)(1) is unconstitutional

---

[4] Over a month after the motel room search, Mr. Nemeth was arrested for possession of a Taurus handgun. The details are not relevant to this appeal. We mention it only to note that this subsequent possession forms the basis of the second felon-in-possession count.

facially and as applied under *New York State Rifle & Pistol Ass'n, Inc.* v. *Bruen*, 597 U.S. 1 (2022). Mr. Nemeth conceded his challenge to § 922(g) was "disallowed" under *Vincent* v. *Garland*, 80 F.4th 1197 (10th Cir. 2023) (*Vincent I*). RI.29.

Mr. Nemeth also moved to suppress the evidence seized from Room 140 and his Toyota Rav 4, any "statements made during and after the execution of the warrant," and "evidence seized from Mr. Nemeth during his subsequent arrest[.]" RI.102. He argued the search warrant was "unlawful" for two reasons. RI.86. *First*, Duke's sniffs "lack[ed] reliability" under *Franks* v. *Delaware*, 438 U.S. 154 (1978).[5] RI.86. And *second*, Duke's sniffs at the motel room door and outside his vehicle were "unconstitutional search[es]" under the Fourth Amendment.[6] RI.86. According to Mr. Nemeth, the dog sniffs were "impermissible physical intrusions onto constitutionally protected spaces" under *Florida* v. *Jardines*, 569 U.S. 1 (2013) and "a violation of a reasonable expectation of privacy" under *Katz*. RI.92–93. Once

---

[5] On appeal, Mr. Nemeth does not pursue his reliability challenge to Duke's sniffs. Nor does he renew his *Franks* argument. We deem these arguments waived. *See United States* v. *Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) ("Ordinarily, issues not raised by a party on appeal are deemed waived.").

[6] Mr. Nemeth does not reassert his challenge to Duke's parking lot sniff of the Rav 4. We deem this argument waived. *See Wiseman*, 297 F.3d at 979.

"the information regarding [Duke]'s purported indications [are] excised from the warrant affidavit," said Mr. Nemeth, the warrant is "invalid" because Duke's sniffs are "the sole basis establishing probable cause[.]" RI.86.

Relevant here, Mr. Nemeth argued Duke's sniff at the motel room door violated "his reasonable expectation of privacy in the area immediately outside his hotel room door[.]" RI.93. In support, he cited *United States* v. *Whitaker*, 820 F.3d 849 (7th Cir. 2016), which in his view involved "an analogous situation to that presented here[.]" RI.93. According to Mr. Nemeth, the Seventh Circuit in *Whitaker* found "the use of [a] drug-sniffing dog in the interior hallway of an apartment building 'clearly invaded reasonable privacy expectations' of its resident." RI.93 (quoting *Whitaker*, 820 F.3d at 852). Mr. Nemeth posited that just because apartments and hotel rooms "often open into a common interior hallway does not mean that [Fourth Amendment] protections are present only on the inside of a closed door." RI.94.

The government opposed Mr. Nemeth's suppression motion. It understood his *Katz* argument to be "based on the sniff of the hotel hallway." RI.165. And, in the government's view, Mr. Nemeth "ha[d] no reasonable expectation of privacy at the door of his hotel room where he was a guest." RI.165. The government focused on cases involving privacy interests in

7

common areas of apartment buildings, including *United States* v. *Lewis*, 38 F.4th 527 (7th Cir. 2022). RI.165. The government described *Lewis* as holding that a dog sniff in a common hallway was not a search under the Fourth Amendment because the defendant-occupant "had no reasonable expectation of privacy at his hotel room door."[7] RI.166 (citing *Lewis*, 38 F.4th at 535–36).

The district court held a two-day suppression hearing where it reviewed body camera footage and received testimony from Deputy Bryant, Officer Price, and Mr. Nemeth's expert witness in K-9 training and handling. The court also heard oral argument from the parties. Defense counsel did not press a *Katz* privacy-based theory about his motel room.[8] The government understood Mr. Nemeth's privacy-based theory under *Katz* as the "issue[] of the motel hallway." RIII.239. And relying on *Lewis*, the government emphasized motel guests cannot "reasonably expect to be free of dog sniffs in the hallway." RIII.236–37. The government also marshaled

---

[7] The government also opposed Mr. Nemeth's other suppression arguments. As noted, those arguments are not at issue on appeal, so we do not discuss them.

[8] Defense counsel at one point suggested Duke's "sniffs were, in fact, searches, and they violated Mr. Nemeth's reasonable expectation of privacy . . . in the area of the parking lot." RIII.267–68. Whether Mr. Nemeth had a reasonable expectation of privacy in the motel parking lot is not at issue on appeal.

*United States* v. *Maestas*, 639 F.3d 1032 (10th Cir. 2011). This case, at least according to the government, notes a consensus among circuits that "there's no reasonable expectation of privacy in a common area in an apartment." RIII.237.

C

The district court denied Mr. Nemeth's motion to dismiss and motion to suppress in a consolidated written order.

1

The district court first turned to Mr. Nemeth's suppression motion. In analyzing Duke's motel hallway sniff, it acknowledged that a search occurs under the Fourth Amendment when "the government invades an area in which a person has a 'reasonable expectation of privacy.'" RI.204 (quoting *Katz*, 389 U.S. at 360 (Harlan, J., concurring)). The district court understood Mr. Nemeth's argument as claiming "a reasonable expectation of privacy in the hallway" outside the motel room. RI.208. Although it acknowledged Mr. Nemeth's "reasonable expectation of privacy within the motel room[,]" the district court reasoned this did not necessarily mean "a legitimate expectation of privacy [in the motel room] stretche[d] beyond the confines of the room to common areas in the motel." RI.208 (citing *Stoner* v. *California*, 376 U.S. 483, 490 (1964)). The district court looked to the Seventh Circuit decisions cited by the parties—*Whitaker* and *Lewis*—and

9

found *Lewis* "more applicable here." RI.209. According to the district court, *Lewis*'s holding that "a hotel guest has no legitimate expectation of privacy in being free of dog sniffs in an exterior hotel hallway" was more persuasive because "the guest cannot exclude others from the hallway." RI.209.

As for *Whitaker*, the district court found it less instructive because it "deals with an apartment building, which notably is residential in nature, rather than a commercial motel providing temporary habitation." RI.209. And access to the hallway in *Whitaker* "was limited to residents and their guests by locked doors . . . unlike the motel hallway here[.]" RI.209. "Moreover," the district court explained, "Duke's free-air sniffs in the hallway disclosed only the presence or absence of controlled substances in Room 140, and [Mr. Nemeth] had no legitimate expectation of privacy in possessing controlled substances." RI.210 (citing *Illinois* v. *Caballes*, 543 U.S. 405, 408–09 (2005)). The district court denied the motion, ruling Mr. Nemeth "did not have a legitimate expectation of privacy in the motel hallway." RI.210, 215.[9]

---

[9] The district court also rejected Mr. Nemeth's remaining arguments—namely, that Duke's hallway sniff was a "search" under the property-based approach; that Duke's parking lot sniff of the Rav 4 was a "search"; that Duke's indications were not sufficiently reliable; and that Mr. Nemeth was entitled to a *Franks* hearing. Again, these arguments are not at issue on appeal, so we do not describe them further.

10

**2**

The district court next addressed Mr. Nemeth's motion to dismiss the felon-in-possession charges. Recall, Mr. Nemeth argued § 922(g)(1) is unconstitutional on its face and as applied. The district court concluded these arguments were "raised and rejected" in *Vincent I*. RI.215. There we upheld § 922(g)(1)'s constitutionality in the wake of *Bruen*'s "new test for determining the scope of the Second Amendment[.]" *Vincent I*, 80 F.4th at 1201–02. We also confirmed *United States* v. *McCane*, 573 F.3d 1037 (10th Cir. 2009), a case upholding the constitutionality of § 922(g)(1)'s prohibition on the possession of firearms by felons, was not "indisputably and pellucidly abrogate[d]" by *Bruen*. *Id*. at 1202. Under *Vincent I* and *McCane*, the district court denied the motion to dismiss, reasoning § 922(g)(1) "is not unconstitutional facially or as applied to any non-violent felon, including [Mr. Nemeth]." RI.216.

**3**

Mr. Nemeth pleaded guilty under a plea agreement to one count of possession with intent to distribute fifty grams or more of a mixture of methamphetamine and one count of felon in possession of a firearm.[10] He

---

[10] The government agreed to dismiss the second felon-in-possession count under Federal Rule of Criminal Procedure 11(c)(1)(A).

11

reserved the right to challenge the district court's denial of his suppression motion. The district court accepted Mr. Nemeth's conditional guilty plea. Mr. Nemeth was sentenced to sixty months in prison followed by four years of supervised release.

This timely appeal followed.

## II

We begin with Mr. Nemeth's challenge to the denial of his suppression motion. He contends Duke's sniff of the motel room door was a search that violated his reasonable expectation of privacy inside his motel room.[11] He insists the district court was wrong to focus on whether he had a reasonable expectation of privacy *in the hallway*. "[T]he level of privacy one has immediately outside their door," Mr. Nemeth maintains, "does not determine whether law enforcement may conduct warrantless searches of the dwelling behind it." Op. Br. at 13. With the focus on his reasonable expectation of privacy inside the room, Mr. Nemeth maintains a drug dog

---

[11] Mr. Nemeth affirmatively abandons his property-based Fourth Amendment challenge on appeal: "Mr. Nemeth does not assert here that officers infringed on any of his property rights." Op. Br. at 11 n.6. Any arguments relying on a property-based theory are waived. *See United States* v. *Carrasco-Salazar*, 494 F.3d 1270, 1273 (10th Cir. 2007) (observing an issue is waived when a party "expressly raise[s] th[e] issue . . . then proceed[s] to abandon it" (quoting *United States* v. *Denkins*, 367 F.3d 537, 543 (6th Cir. 2004))).

12

sniff of a dwelling door—even if it discloses only the presence of controlled substances—qualifies as a search under the Fourth Amendment. We decline to reach the merits of Mr. Nemeth's argument because it is not preserved, as we will explain.

## A

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one society is prepared to recognize as reasonable,' . . . official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter* v. *United States*, 585 U.S. 296, 304 (2018) (quoting *Smith* v. *Maryland*, 442 U.S. 735, 740 (1979)). "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz*, 389 U.S. at 360 (Harlan, J., concurring)). "A search for purposes of the Fourth Amendment occurs when government officials violate an individual's legitimate expectation of privacy." *United States* v. *Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). Importantly, "the extent to which the Fourth Amendment protects people may depend upon where those people are." *Minnesota* v. *Carter*, 525 U.S.

83, 88 (1998); *accord United States* v. *Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999) ("The extent of [Fourth Amendment] protection sometimes depends upon the location of the person claiming the protection."). That is why we must "factor into the expectation-of-privacy analysis a defendant's connection to the place invaded." *United States* v. *Wells*, 739 F.3d 511, 525 (10th Cir. 2014).

Ordinarily, "[w]hen reviewing the district court's denial of a motion to suppress, we review legal conclusions de novo and findings of fact for clear error." *United States* v. *Smith*, 606 F.3d 1270, 1275 (10th Cir. 2010); *see also Wells*, 739 F.3d at 522 ("The existence of a subjective expectation of privacy is a question of fact subject to review for clear error. Whether any such subjective expectation of privacy is one society would consider reasonable . . . is subject to de novo review." (citation omitted)). But those standards apply only when the argument on appeal has been preserved.

Federal Rule of Criminal Procedure 12 has special significance when it comes to preservation in the suppression context. A defendant must file a pretrial motion to suppress evidence "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(C). Should the defendant fail to meet the deadline for moving to suppress, "the motion is untimely" and will not

14

be considered unless the defendant "shows good cause." Fed. R. Crim. P. 12(c)(3).

Our precedents have been clear about what Rule 12 mandates. "[W]e are required under Federal Rule of Criminal Procedure 12[] to decline review of any argument not made in a motion to suppress evidence and raised for the first time on appeal, unless good cause can be shown why the argument was not raised below." *United States* v. *Warwick*, 928 F.3d 939, 944 (10th Cir. 2019). This means we treat a "new [suppression] argument on appeal" as "untimely under Rule 12[.]" *United States* v. *Herrera*, 51 F.4th 1226, 1267 n.14 (10th Cir. 2022). In *United States* v. *Burke*, we clarified that Rule 12(c)(3)'s good-cause standard—not Rule 52(b)'s "general provision for plain error review"—"applies to pretrial suppression motions and a suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent a showing of good cause for why it was not raised before the trial court." 633 F.3d 984, 988 (10th Cir. 2011). Although *Burke* predates the 2014 amendments to Rule 12, those amendments "did not change the standard for appellate review," meaning *Burke*'s holding "remains good law." *United States* v. *Bowline*, 917 F.3d 1227, 1236 (10th Cir. 2019). The upshot: We will not review a suppression argument a defendant failed to timely raise in the district court "absent good cause." *Id.*

15

at 1237; *see also, e.g.*, *United States* v. *Lowe*, 117 F.4th 1253, 1259 n.1 (10th Cir. 2024) (reiterating *Burke*'s holding).

## B

Mr. Nemeth argues on appeal "a sniff from a trained narcotics dog of a hotel room from the hallway *is* a 'search,' subject to the Fourth Amendment's warrant requirement." Op. Br. at 7. In Mr. Nemeth's view, Duke's hallway sniff violated his reasonable expectation of privacy in his motel room under *Katz*. He faults the district court for framing the *Katz* issue as whether he had a "reasonable expectation of privacy in the hallway[.]" Op. Br. at 13. Mr. Nemeth insists on appeal he "is not asserting law enforcement performed an unlawful search of the hallway. He asserts that law enforcement searched his room even though they did not set foot inside it." Op. Br. at 14.

Claiming his Fourth Amendment argument implicates his privacy interest *inside* Room 140, Mr. Nemeth invokes *Kyllo* v. *United States*, 533 U.S. 27 (2001), for the proposition that law enforcement violates that privacy interest "when it uses sense-enhancing methods and technology not in common use" to gather information about "the interior" of protected spaces that "could not otherwise have been obtained without physical intrusion into the constitutionally protected area[.]" Op. Br. at 10 (internal quotation marks omitted). He also cites the Seventh Circuit's decision in

16

*Whitaker*.[12] Under Mr. Nemeth's reading of *Whitaker*, "the Seventh Circuit held that law enforcement conducted an unconstitutional warrantless search of an apartment by relying on a dog to sniff out odors of narcotics from the hallway outside the apartment." Op. Br. at 12. And "[j]ust as the dog sniff from the apartment hallway was a search in *Whitaker*," Mr. Nemeth explains, "the officers searched [his] room by using a trained dog to sniff contents inside his room. He lawfully occupied the room and reasonably expected privacy in it." Op. Br. at 12. Mr. Nemeth argues law enforcement "invaded that privacy" by using Duke "to 'detect objects or activities' inside [his] room they otherwise were not privy to." Op. Br. at 13 (quoting *Whitaker*, 820 F.3d at 853).

This appellate argument (that Duke's hallway sniff violated Mr. Nemeth's reasonable expectation of privacy *inside Room 140*) is plainly different from the argument advanced in the district court (that Duke's hallway sniff violated Mr. Nemeth's reasonable expectation of privacy *in the hallway*). Recall, Mr. Nemeth's motion to suppress contained multiple

---

[12] Although he does not discuss the case in any detail, Mr. Nemeth includes in his analysis a parenthetical citation to *United States* v. *Thomas*, 757 F.2d 1359 (2d Cir. 1985), where the Second Circuit held a dog sniff outside the defendant's apartment door was a search because he "had a legitimate expectation that the contents of his closed apartment would remain private . . . [and] could not be 'sensed' from outside his door." Op. Br. at 12 (quoting *Thomas*, 757 F.2d at 1367).

references to his privacy interest in the motel hallway. *See* RI.93 ("[T]he dog sniff was . . . a violation of [Mr. Nemeth's] reasonable expectation of privacy *in the area immediately outside his hotel room door*[.]" (emphasis added)); RI.94 ("Both apartments and hotel rooms are subject to Fourth Amendment protections, and that both often open into a common interior hallway does not mean that those protections are present only on the inside of a closed door."). That motion contained no argument that Duke's hallway sniff infringed Mr. Nemeth's reasonable expectation of privacy inside the room. Nor did Mr. Nemeth advance such a theory at the suppression hearing.

To be sure, Mr. Nemeth cited *Whitaker* in the district court. He claimed *Whitaker* involved "an analogous situation to that presented here," and described how the Seventh Circuit "relied on *Kyllo* to find the use of [a] drug-sniffing dog in the interior hallway of an apartment building 'clearly invaded reasonable privacy expectations' of its resident." RI.93 (quoting *Whitaker*, 820 F.3d at 852). In explaining why *Whitaker* presented circumstances analogous to this case, Mr. Nemeth's privacy interest argument was by its own terms cabined to the motel hallway:

> Both apartments and hotel rooms are subject to Fourth Amendment protections, and that both often open into a common interior hallway does not mean that those protections are present only on the inside of a closed door. To be sure, Mr. Nemeth did not have a reasonable expectation of *complete* privacy in the hallway outside his hotel room, as other hotel guests, visitors, and staff could of course pass through the

18

hallway en route to their destinations. But that license to traverse is limited; it would not be reasonable, for instance, for someone to set up a folding chair right outside another's hotel room, or to linger with their ear to the door. And it does not mean, as the Seventh Circuit bluntly put it, that Mr. Nemeth "had no reasonable expectation of privacy against persons in the hallway snooping into his apartment using sensitive devices not available to the general public." *Whitaker*, 820 F.3d at 853.

RI.94. Mr. Nemeth did not otherwise connect *Whitaker* to the facts here—at least not in terms of the privacy interest inside Room 140 that now anchors his appellate claim.

Given this presentation, it is unsurprising the district court did not pass on the argument Mr. Nemeth now makes on appeal. *See Tesone* v. *Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019) ("[A]ppellate courts can reach issues that were either pressed by the appellant before, or passed upon by, the lower court." (internal quotation marks omitted)). The district court assumed Mr. Nemeth "had a reasonable expectation of privacy within the motel room." RI.208 (citing *Stoner*, 376 U.S. at 490); *see, e.g.*, *Gordon*, 168 F.3d at 1226 (recognizing a "registered occupant of the [motel] room" had a reasonable expectation of privacy therein); *United States* v. *Reeves*, 524 F.3d 1161, 1165 n.2 (10th Cir. 2008) ("There is no question Reeves' motel room was his home for purposes of the Fourth Amendment."). Critically, however, the district court did not address whether Duke's sniff at the door infringed Mr. Nemeth's privacy expectation inside the room. It

19

instead focused only on whether Mr. Nemeth's privacy interest "stretche[d] beyond the confines of the room to common areas in the motel." RI.208. And to that question, the district court answered "no." Mr. Nemeth "did not have a legitimate expectation of privacy in the motel hallway." RI.210.

Put simply, in the district court, Mr. Nemeth framed the *Katz* issue as whether Duke's sniff of the motel room door violated his reasonable expectation of privacy in the *hallway immediately outside his motel room*. Now, Mr. Nemeth reframes the *Katz* issue, contending the dog sniff violated his reasonable expectation of privacy *inside his motel room*. Under Rule 12, Mr. Nemeth's new appellate argument is "untimely." Fed. R. Crim. P. 12(c)(3); *see Herrera*, 51 F.4th at 1267 n.14 (finding a new suppression argument advanced on appeal untimely for purposes of Rule 12). The argument is therefore waived, and we may review it only if Mr. Nemeth shows good cause for failing to make it in the district court. *See Warwick*, 928 F.3d at 944. The good-cause exception to Rule 12 is "narrow," *United States* v. *Hamilton*, 587 F.3d 1199, 1215 (10th Cir. 2009) (quoting *United States* v. *Santos Batista*, 239 F.3d 16, 19 (1st Cir. 2001)), and we "rarely" grant relief under it, *Burke*, 633 F.3d at 988. Mr. Nemeth does not argue good cause. Rather, he maintains his suppression motion "assert[ed] that [Duke's] sniff violated the Fourth Amendment on the same ground he asserts here." Op. Br. at 8. He cites to his entire suppression motion in

support of this statement. We do not read Mr. Nemeth's motion to include the particular argument he advances on appeal.[13]

## C

We next consider whether we should exercise our discretion to reach Mr. Nemeth's new argument. Whether arguments raised for the first time on appeal should be addressed and resolved is a matter "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton* v. *Wulff*, 428 U.S. 106, 121 (1976). Here, the government has not argued waiver. Instead, the government seems to endorse Mr. Nemeth's framing of the Fourth Amendment issue: "whether a sniff of the open-air space outside of a motel room violates the occupant's reasonable expectation of privacy held within that room." Ans. Br. at 11.

---

[13] Judge Moritz says we have "parse[d] the issue too closely" and concludes Mr. Nemeth preserved his suppression argument. Concurrence at 2. She asks "what more defense counsel could have done to preserve the argument below." Concurrence at 2. The answer seems straightforward: Defense counsel could have made to the district court the argument he now raises before us on appeal. It remains unclear why defense counsel repeatedly chose to focus on the motel hallway as the area in which Mr. Nemeth had a reasonable expectation of privacy. But "our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States* v. *Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (internal quotation marks omitted). Our role is not to develop or refine arguments but to resolve them. *See United States* v. *Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) ("We cannot make arguments for [the defendant].").

21

A party can waive the opposition's failure to preserve an argument by not asserting waiver. *See, e.g.*, *Diné Citizens Against Ruining Our Env't* v. *Haaland*, 59 F.4th 1016, 1038 n.9 (10th Cir. 2023) (explaining appellee "did not argue that the argument was waived in its response brief, so the waiver has been waived"); *United States* v. *Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) (concluding the government's failure to argue waiver resulted in waiver of any waiver argument). In keeping with this general rule, we have said "the 'waiver of the waiver' principle is discretionary, not mandatory[,]" *United States* v. *Rodebaugh*, 798 F.3d 1281, 1314 (10th Cir. 2015), because waiver "binds only the party, not the court[,]" *Margheim* v. *Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017) (internal quotation marks omitted).[14]

We will exercise our discretion to overlook a party's waiver and consider a new argument on appeal "only in the most unusual circumstances." *Lyons* v. *Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993); *see also Margheim*, 855 F.3d at 1088 (noting "this discretion should be exercised only sparingly"). We may "determine an issue raised for the

---

[14] At no point has the government invoked Rule 12. Our precedent has not addressed whether Rule 12's requirements are subject to waiver. Even assuming that possibility, we would not address Mr. Nemeth's new appellate argument under the circumstances here.

first time on appeal if it is a pure matter of law and its proper resolution is certain." *First W. Cap. Mgmt. Co.* v. *Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) (internal quotation marks omitted). "But even for matters of law, we decline to consider newly presented legal arguments unless the proper legal disposition is beyond reasonable doubt." *Ave. Cap. Mgmt. II, L.P.* v. *Schaden*, 843 F.3d 876, 886 (10th Cir. 2016); *see id.* (explaining a "legal disposition is subject to reasonable doubt, for example, when the issue involves a matter of first impression in our circuit").

Applying these standards, we conclude the most prudent course is to enforce Mr. Nemeth's waiver and not resolve the newly raised issue at the heart of his appeal: whether a drug dog sniff at the door of a dwelling (here, a motel room) violates the occupant's reasonable expectation of privacy inside the dwelling.[15] This is an open question in the Supreme Court and our court and has split the circuits that have weighed in.

---

[15] Mr. Nemeth maintains Room 140 was his "private dwelling" for purposes of the Fourth Amendment and that he "reasonably expect[ed] the same sanctuary from intrusion and observation that anyone would demand in their own home[.]" Op. Br. at 9–10. As discussed, the district court agreed Mr. Nemeth "had a reasonable expectation of privacy within the motel room." RI.208 (citing *Stoner*, 376 U.S. at 490). The government does not contend otherwise. Nor could it. Our precedent treats a motel room like a dwelling for purposes of the Fourth Amendment. *See, e.g.*, *Reeves*, 524 F.3d at 1165 n.2 (concluding "[t]here is no question Reeves' motel room [where he had been living for at least three months] was his home for purposes of the Fourth Amendment"); *see also United States* v. *Kimoana*, 383 F.3d 1215,

(continued)

23

**1**

The Supreme Court has yet to resolve this issue, as a brief survey of the relevant jurisprudence confirms. In *Kyllo,* the Court held law enforcement conducts a "search" when it "obtain[s] by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area' . . . at least where. . . the technology in question is not in general public use." *Kyllo*, 533 U.S. at 34 (quoting *Silverman* v. *United States*, 365 U.S. 505, 512 (1961)). But in *Caballes*, the Court read *Kyllo* to turn on the fact that the thermal imaging device at issue "was capable of detecting lawful activity[.]" 543 U.S. at 409. This matters, as the Court explained in *United States* v. *Jacobsen*, because government conduct which "reveal[s] whether a substance is [contraband], and no other arguably 'private' fact, compromises no legitimate privacy interest." 466 U.S. 109, 123 (1984). A dog sniff is generally considered "*sui generis*" for this very reason. *United States* v. *Place*, 462 U.S. 696, 707 (1983). A sniff

---

1221 (10th Cir. 2004) ("Overnight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying."); *Gordon*, 168 F.3d at 1226 (explaining, to establish a reasonable expectation of privacy in a motel room, "we have required a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered").

"does not expose noncontraband items that otherwise would remain hidden from public view[.]" *Id.* (concluding a dog sniff of defendant's luggage at the airport was not a "search" in part because it "disclose[d] only the presence or absence of narcotics, a contraband item").

The parties dispute whether the rule in *Caballes* and *Place* applies when the detected contraband is found *inside a dwelling*. Mr. Nemeth contends the dog sniffs in those cases differ from Duke's sniff because they occurred in a public setting: "A dwelling is far different than luggage at the airport or in a car, and the Fourth Amendment does not treat them as equals." Op. Br. at 15. The government says the public/private distinction does not matter and advocates for a categorical rule. Duke's sniff is not a "search," the government argues, because it "did not detect anything more than the smell or the absence of the smell of narcotics emanating from" Room 140. Ans. Br. at 15.

Mr. Nemeth concedes "[w]hether a sniff is categorically never a search remains [a]n open question." Reply Br. at 2. Although the Supreme Court came face-to-face with this issue in *Jardines*, it did not address whether a dog sniff at the door of the defendant's home violated his reasonable expectation of privacy under *Katz* and instead resolved the case on the property-based approach. *See* 569 U.S. at 10–11. Justice Kagan authored a concurrence expressing her willingness to decide the issue based on the

25

defendant's privacy interest in the home. *Id.* at 13 (Kagan, J., concurring). In her view, *Kyllo* squarely governed the outcome, and *Caballes* had no application: "*Caballes* concerned a drug-detection dog's sniff of an automobile during a traffic stop. And we have held, over and over again, that people's expectations of privacy are much lower in their cars than in their homes." *Id.* at 14 n.1 (Kagan, J., concurring) (citation omitted).

Justice Kagan's reasoning finds support in the Court's longstanding veneration for the home in the Fourth Amendment context. *See, e.g.*, *Segura* v. *United States*, 468 U.S. 796, 810 (1984) ("[T]he home is sacred in Fourth Amendment terms[.]"); *Caniglia* v. *Strom*, 593 U.S. 194, 199 (2021) ("What is reasonable for vehicles is different from what is reasonable for homes."). And the *Katz* inquiry requires us to consider location in determining the objective reasonableness of a defendant's privacy expectation. *See Rakas* v. *Illinois*, 439 U.S. 128, 143 (1978) ("[T]he Court in *Katz* held that capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.").[16]

---

[16] Such considerations further highlight the doctrinal significance of our enforcement of Rule 12 in this case. That is, precision around the location in which Mr. Nemeth asserts a privacy interest does not just matter in an abstract sense—it could control the outcome of our Fourth Amendment analysis.

The precise place of the alleged search—and the objective reasonableness of Mr. Nemeth's privacy interest in that area—is of paramount importance to the outcome here. Given the uncertainty surrounding application of *Caballes* and *Place* in the context of the home, we cannot say Supreme Court precedent places proper resolution of the legal question Mr. Nemeth raises beyond reasonable doubt.

### 2

The issue remains open in our circuit too.[17] Our cases seem to speak of *Caballes*, *Jacobsen*, and *Place* as establishing a categorical rule "that dog sniffs are not 'searches' within the meaning of the Fourth Amendment." *United States* v. *Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003); *cf. United States* v. *Shuck*, 713 F.3d 563, 568–69 (10th Cir. 2013) (holding that a detective's sniff of a PVC pipe protruding from a trailer home which revealed the odor of marijuana was not a "search" under *Caballes* because it "could not uncover intimate details or private activity within the trailer home").[18] And one panel has rejected an attempt to narrowly construe

---

[17] Mr. Nemeth agrees our precedent does not squarely answer whether a dog sniff at a dwelling door constitutes a "search." At oral argument, defense counsel characterized this issue as one "of first impression" in this circuit. *See* Oral Arg. at 0:23.

[18] *See also United States* v. *Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998) ("A canine sniff itself does not implicate Fourth Amendment rights

(continued)

27

*Caballes. See United States* v. *Villa*, 348 F. App'x 376, 378 (10th Cir. 2009) (unpublished) (rejecting defendant's argument that *Caballes*'s holding "is limited to dog sniffs executed during the course of a legal traffic stop").

Still, some of our precedents suggest whether the dog sniff occurs in a "public" setting informs whether it is a search under *Katz. See United States* v. *Garcia*, 42 F.3d 604, 606 (10th Cir. 1994) (discussing *Thomas*'s "focus[] on the heightened expectation of privacy inside a dwelling" and holding that a dog sniff in an Amtrak baggage car was not a search in part because the baggage car was not "'private' in the sense of a dwelling or hotel room"); *United States* v. *Stone*, 866 F.2d 359, 363 n.1 (10th Cir. 1989)

---

because of the limited information it provides and its minimal intrusiveness."); *United States* v. *Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993) ("Regardless of whether Ludwig subjectively expected that the drugs in his trunk would not be smelled, society does not recognize that expectation as legitimate."); *United States* v. *Morales-Zamora*, 914 F.2d 200, 204–05 (10th Cir. 1990) ("Together, *Jacobsen* and *Place* make clear that there is no intrusion on legitimate privacy interests (and hence no 'search') where the only information revealed is limited to contraband items."); *United States* v. *Castaneda*, 368 F. App'x 859, 862 (10th Cir. 2010) (unpublished) ("As the Supreme Court has explained, 'any interest in possessing contraband cannot be deemed "legitimate," and thus, governmental conduct that *only* reveals the possession of contraband compromises no legitimate privacy interest.'" (quoting *Caballes*, 543 U.S. at 408)); *United States* v. *Villa*, 348 F. App'x 376, 378 (10th Cir. 2009) (unpublished) ("There is no legitimate interest in possessing illegal substances; therefore, police conduct that only reveals the presence of illegal substances does not 'compromise any legitimate interest in privacy.'" (quoting *Caballes*, 543 U.S. at 408)).

(addressing a challenge to a dog sniff of an automobile during traffic stop and rejecting defendant's reliance on *Thomas* because it was "based . . . on the 'heightened expectation of privacy' in the home" (quoting *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985))).

### 3

Four of our sister circuit courts have examined whether a dog sniff at a dwelling door violates the occupant's reasonable expectation of privacy in the dwelling. The courts of appeal appear evenly split on the issue.

The Seventh Circuit, in *Whitaker*, relied on Justice Kagan's *Jardines* concurrence to conclude police officers "engaged in a warrantless search within the meaning of the Fourth Amendment when they had a drug-sniffing dog come to the door of the [defendant's] apartment and search for the scent of illegal drugs." 820 F.3d at 854. The court distinguished *Place* and *Caballes* because "[n]either case implicated the Fourth Amendment's core concern of protecting the privacy of the home." *Id.* at 853 (noting those cases involved "dog sniffs in public places").[19]

---

[19] In *Lewis*, the Seventh Circuit subsequently distinguished between "temporary dwelling places" like hotel rooms and a permanent "home" for purposes of the occupant's reasonable expectation of privacy. Although the court of appeals agreed "the Fourth Amendment extends to temporary dwelling places, such as hotel and motel rooms[,]" this "does not mean an expectation of privacy that is reasonable in a home (i.e., to be free of warrantless dog sniffs) is necessarily reasonable in a hotel room." *Lewis*,

(continued)

The Second Circuit, in *Thomas*, took a similar approach. There, the court acknowledged the "discriminating and unoffensive" nature of dog sniffs "relative to other detection methods," but concluded "the canine sniff at [the defendant's] door constituted a search" because of his "heightened expectation of privacy inside his dwelling[.]" 757 F.2d at 1367 (noting "the defendant had a legitimate expectation that the contents of his closed apartment would remain private," and law enforcement's "[u]se of the trained dog impermissibly intruded on that legitimate expectation").

We find a different approach in the Fourth and Eighth Circuits. In *United States* v. *Scott*, a pre-*Jardines* case, the Eighth Circuit read *Caballes* and *Jacobsen* as establishing a categorical rule: "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." 610 F.3d 1009, 1016 (8th Cir. 2010) (quoting *Caballes*, 543 U.S. at 408). Regardless of the defendant's privacy interest in his apartment, the drug dog's "sniff of the apartment door frame" was not a

---

38 F.4th at 535–36. The Seventh Circuit emphasized the defendant-occupant was "a mere guest, not a resident." *Id.* at 536. On that basis, *Lewis* held that hotel guests could not "reasonably expect to be free of dog sniffs in the exterior hallway" of a hotel. *Id.* (noting "the exterior hallway of a hotel adjacent to a parking lot is much closer to the public settings in *Caballes* and *Place* than the front porch in *Jardines*"). Whatever distinction might exist between a motel room and an apartment for purposes of Fourth Amendment protection, it was never argued in this case.

search because the defendant "had no legitimate privacy interest in the illegal drugs that [the dog] sniff detected." *Id.* The court rejected the defendant's suggestion that *Kyllo* "encompass[es] dog sniffs" because, unlike the thermal imaging device in that case, "dog sniffs are not 'capable of detecting lawful activity.'" *Id.* (quoting *Caballes*, 543 U.S. at 409).

Most recently, in *United States* v. *Johnson*, the Fourth Circuit held a "dog sniff at [the defendant]'s apartment door violated no reasonable expectation of privacy." 148 F.4th 287, 293 (4th Cir. 2025). The court described the reasoning in *Caballes* and *Place* as "categorical, not context-specific." *Id.* It did not matter, in the Fourth Circuit's view, whether the case "involve[d] a home" rather than a car or luggage. *Id.* at 292. "Because a dog sniff can reveal only the presence of contraband, and there is no reasonable expectation of privacy in contraband, a dog sniff is not a search – period." *Id.* at 293. The Fourth Circuit "recognize[d]" Justice Kagan's *Jardines* concurrence "embrace[s]. . . that a dog sniff at the door of a home may violate a reasonable expectation of privacy." *Id.* "But," it noted, "the Supreme Court has declined the opportunity to follow suit." *Id.* (citing *Jardines*, 569 U.S. at 11). The Fourth Circuit "consider[ed] [itself] bound" by *Place* and *Caballes* "[u]nless and until the Court [says] . . . otherwise[.]" *Id.*

***

For these reasons, we conclude Mr. Nemeth waived the issue he raises on appeal, and we see good reason not to excuse that waiver here.[20] We therefore affirm the district court's suppression ruling.

## III

We last turn to the district court's denial of Mr. Nemeth's motion to dismiss the felon-in-possession charges.[21] "We generally review a district

---

[20] Because our disposition results from Mr. Nemeth's waiver, we need not decide in this case whether a dog sniff can *ever* be a search. Here, the district court concluded Mr. Nemeth did not have a legitimate expectation of privacy in the motel hallway, so Duke's sniff at the door of Room 140 could not infringe any such purported privacy interest. Mr. Nemeth does not challenge this conclusion on appeal. And, to the extent Duke's sniff at the door of Room 140 may have violated Mr. Nemeth's reasonable expectation of privacy inside his motel room, Mr. Nemeth waived that argument, and we do not intend to foreclose any future litigants from making it. *See People for the Ethical Treatment of Prop. Owners* v. *U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("[I]f it is not necessary to decide more, it is necessary not to decide more." (alteration in original) (quoting *PDK Labs. Inc.* v. *DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring))); *Whitehouse* v. *Ill. Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955) (Frankfurter, J.) ("These are perplexing questions. Their difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.").

[21] The conditional plea provision in Mr. Nemeth's plea agreement reserves only "his right to appeal the adverse determination of his Motion to Suppress." RII.12. The agreement, however, does not contain a general waiver of Mr. Nemeth's right to appeal his conviction or collaterally attack his sentence. And while it does purport to waive "those rights outlined in Federal Rule of Criminal Procedure 11[,]" as well as "any rights [Mr. Nemeth] might otherwise have under Federal Rule of Evidence 410 or Federal Rule of Criminal Procedure 11(f)[,]" those rules do not impact his

(continued)

court's denial of a motion to dismiss a criminal indictment for abuse of discretion," *United States* v. *Warner*, 131 F.4th 1137, 1145 (10th Cir. 2025) (internal quotation marks omitted), but "[c]hallenges to the constitutionality of a statute are reviewed de novo[,]" *United States* v. *Jackson*, 138 F.4th 1244, 1250 (10th Cir. 2025) (internal quotation marks omitted).

On appeal, Mr. Nemeth reasserts his facial and as-applied constitutional challenges to 18 U.S.C. § 922(g)(1). He argues the Supreme Court vacated *Vincent I* "and remanded it to this Court with instructions to reconsider in light of *United States v. Rahimi*, 602 U.S. 680 (2024), to apply the historical tradition test established in *Bruen*." Op. Br. at 28–29. Mr. Nemeth similarly contends *McCane* is no longer good law because "it did not apply the historical tradition test, as precedent now requires." Op. Br. at 29 (citing *Rahimi*, 602 U.S. at 691).

But we have already concluded *McCane* "remains binding after *Rahimi*" and "readopt[ed]" our *Vincent I* opinion. *See Vincent* v. *Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025) (*Vincent II*). Mr. Nemeth concedes in his reply brief that his constitutional challenges to § 922(g)(1) are

---

general right to appeal. RII.11, 14. Nothing in the plea agreement prevents Mr. Nemeth from challenging the district court's denial of his motion to dismiss. Nor does the government contend otherwise.

"currently foreclosed" by *Vincent II*. Reply Br. at 17. The district court did not err by rejecting Mr. Nemeth's constitutional challenge to § 922(g)(1), and thus did not abuse its discretion in denying his motion to dismiss.

## IV

We **AFFIRM** the district court's order denying Mr. Nemeth's motion to suppress and motion to dismiss.

Entered for the Court

Veronica S. Rossman
Circuit Judge

24-8049, *United States v. Nemeth*

**MORITZ**, Circuit Judge, concurring in part.

I join Part III of the majority opinion as to James Nemeth's Second Amendment argument, but I write separately on the Fourth Amendment issue because I would affirm the order denying suppression on the merits. The majority declines to reach the suppression argument on the basis that defense counsel failed to properly raise it below. In my view, defense counsel did more than enough to place the relevant question before the district court. The majority's contrary position parses the arguments too closely, disregarding what the parties and the district court took for granted: that the basis of *any* reasonable expectation of privacy here was Nemeth's expectation of privacy in his motel room. I also disagree with the majority that the novelty and difficulty of the Fourth Amendment question is an insurmountable problem; although this case presents a challenging question, answering it involves applying relevant case law to undisputed facts. Doing so, I would affirm the district court's conclusion that no search occurred here.

I.    **Nemeth Preserved His Suppression Argument**

Nemeth's suppression motion argued that the dog sniff violated his reasonable expectations of privacy under *Katz v. United States*, 389 U.S. 347 (1967). Specifically, he argued that the "sniff of the [motel-room] door to Room 140 was a search" because it "gather[ed] information about what was occurring *inside the room—a room indisputably subject to Fourth Amendment protection*." R. vol. 1, 93 (cleaned up) (emphasis added). Crucially, Nemeth's primary authorities for this argument are the same on appeal as they

were below: *Kyllo v. United States*, 533 U.S. 27 (2001), and *United States v. Whitaker*, 820 F.3d 849 (7th Cir. 2016). The majority finds this insufficient because Nemeth "did not otherwise connect *Whitaker* to the facts here." Maj. 19. But he quoted *Whitaker*'s application of *Kyllo* and then provided a full paragraph of explanation as to why his room was "subject to Fourth Amendment protections," despite the fact that "the hallway outside his hotel room" was open to "guests, visitors, and staff"; and he added that it would be unreasonable for someone to "linger" in the hallway "with their ear to the door." R. vol. 1, 94. So not only did Nemeth make the argument that his room was subject to Fourth Amendment protection, rendering the sniff a search, he also explained that any expectation of privacy he had in the hallway resulted from his expectation of privacy in his room. Frankly, I'm not sure what more defense counsel could have done to preserve the argument below.

Nevertheless, the majority seeks to draw a careful distinction between an argument premised on a reasonable expectation of privacy *in the hallway* and an argument premised on a reasonable expectation of privacy *in the motel room*. This parses the issue too closely—indeed, so closely that it escaped the attention of the district court and *both* parties. Below, the district court accepted Nemeth's argument that he had a reasonable expectation of privacy in his room and merely rejected its *extension* to the hallway, stating that although Nemeth "had a reasonable expectation of privacy within the motel room[,] . . . that is not to say a legitimate expectation of privacy stretches beyond the confines of the room to common areas in the motel." *Id.* at 208. And on appeal, both Nemeth and the government treat the suppression issue as properly preserved.

2

Nor does the majority's case law support finding waiver on such a narrow distinction. For instance, the majority cites *United States v. Herrera*, 51 F.4th 1226 (10th Cir. 2022), for the proposition that "a new suppression argument advanced on appeal [is] untimely for purposes of [Federal] Rule [of Criminal Procedure] 12." Maj. 20. True enough. But *Herrera* held that a severance argument was waived under Rule 12 where the defendants never filed a pretrial severance motion. 51 F.4th at 1267 & n.14. That's hardly what happened here. Nor does this case resemble *United States v. Warwick*, where we found an argument about the voluntariness of consent to search waived because the underlying suppression motion argued that there was no consent at all. *See* 928 F.3d 939, 944 (10th Cir. 2019); *cf. United States v. Burke*, 633 F.3d 984, 987–88 (10th Cir. 2011) (finding waiver where suppression motion argued only that warrant lacked sufficient particularity but appellate argument focused on sufficiency of underlying affidavit). Nemeth has consistently argued that he had an expectation of privacy in his room that extended to the hallway in certain respects.

Further, distinguishing between an argument about the hallway and an argument about the motel room risks confusing and conflating *Katz*'s reasonable-expectations analysis with a property-based curtilage analysis. Indeed, because Nemeth raised both *Katz* and curtilage theories below, it makes sense that his suppression motion included statements about both the hallway as curtilage and the hallway as reasonably private. Any expectation of privacy Nemeth had in the hallway necessarily stemmed from his expectation of privacy in the motel room. And any curtilage analysis would be based on the idea that the room is a protected location. Treating Nemeth's argument that the room

3

is a protected location as implicitly abandoning the argument that he had a reasonable expectation of privacy in the room muddles the analysis. In other words, "the privacy interest inside Room 140 that now anchors [Nemeth's] appellate claim" is the same privacy interest that anchored his claim below. Maj. 19. The majority's position might be tenable if Nemeth had argued below that he had a reasonable expectation of privacy in the common hallway but no reasonable expectation of privacy in his room. It might also be tenable if the district court announced it was addressing only the reasonableness of expectations of privacy in the hallway. But Nemeth understandably did not make that unusual argument, and the district court made no such pronouncement. For these reasons, I would find Nemeth adequately preserved his argument.

A final point related to preservation bears mentioning. The majority proffers the unsettled nature of the Fourth Amendment question as grounds for declining to overlook Nemeth's waiver (while implicitly excusing the government's waiver of the waiver). I agree that Nemeth has raised an "open question," *id.* at 23, not definitively resolved by precedent: whether "a drug[-]dog sniff of a dwelling door—even if it discloses only the presence of controlled substances—qualifies as a search under the Fourth Amendment," *id.* at 13. But the majority's hesitancy to decide this issue is perplexing, at best, since we commonly apply the Fourth Amendment's flexible reasonableness standard to novel factual circumstances. *See, e.g.*, *United States v. Watkins*, 156 F.4th 1049 (10th Cir. 2025). That the answer may be nuanced or subject to reasonable debate should not excuse us from our ordinary responsibility to provide it.

## II.    The Dog Sniff of the Motel Room's Door Was Not a Search

Indeed, the majority's detailed discussion of case law provides an excellent starting point on the merits question. I certainly agree that no Supreme Court case directly answers how to apply the dog-sniff holdings of *Illinois v. Caballes*, 543 U.S. 405 (2005), and *United States v. Place*, 462 U.S. 696 (1983), "in the context of the home," or, in this case, a motel room.[1] Maj. 27. At best, we have *Florida v. Jardines*, 569 U.S. 1 (2013). There, the Court held only that a dog sniff at the front door of a home violated the Fourth Amendment under a property theory because it involved intruding on the home's curtilage, a holding that likely does not apply to motel rooms, which typically lack curtilage.[2] *Id.* at 7–9; *see also, e.g.*, *Watkins*, 156 F.4th at 1053–54 (holding that hallway outside motel room was not curtilage).

The absence of a binding Supreme Court holding, however, doesn't leave us bereft of guidance. The majority implicitly acknowledges as much in painting its picture of the unsettled law in this area. But the majority omits several key elements from its

---

[1] Recall that *Place* permitted a dog sniff of airline luggage based on reasonable suspicion, explaining that "the canine sniff is sui generis" because it "discloses only the presence or absence of narcotics, a contraband item." 462 U.S. at 707 (cleaned up); *see also United States v. Jacobsen*, 466 U.S. 109, 123–24 (1984) (relying on *Place* to conclude that "[a] chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy"). And *Caballes* relied on *Place* to conclude that a dog sniff during an otherwise-reasonable traffic stop did not constitute a search. 543 U.S. at 408–09.

[2] Justice Kagan's concurrence would have held that the sniff at the front door of a home also violated reasonable expectations of privacy. *Jardines*, 569 U.S. at 13. Such a holding could be significant on the facts here, but it was not the holding of the Court.

composition. In my view, those elements lead directly to the conclusion that no search occurred here.

First, the majority omits discussion of the type of dwelling at issue. This case involves a motel room, but the majority frames it as being about a generic "dwelling." Maj. 13, 23 & n.15, 25, 27 n.17, 29. I take no issue with the undisputed proposition that "[o]ur precedent treats a motel room *like* a dwelling for purposes of the Fourth Amendment." *Id.* at 23–24 n.15 (emphasis added). But that a motel room is *like* a dwelling does not provide sufficient or conclusive guidance in the Fourth Amendment context, which has almost no bright-line rules beyond the front door of a house. *See Kyllo*, 533 U.S. at 40 ("We have said that the Fourth Amendment draws 'a firm line at the entrance to the house.' That line, we think, must be not only firm but also bright." (cleaned up) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980))).

By ignoring the type of dwelling at issue here, the majority overstates the relevance of the Seventh and Second Circuit's approaches in *Whitaker* and *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985). Each case involved a dog sniff of an *apartment* door, not a motel-room door like we have here. *See Whitaker*, 820 F.3d at 852–54; *Thomas*, 757 F.2d at 1366.

More than that, the majority relegates to a footnote the Seventh Circuit's later decision in *United States v. Lewis*, which distinguished *Whitaker* in holding that a dog sniff of a motel-room door was *not* a search.[3] 38 F.4th 527, 535–36 (7th Cir. 2022).

---

[3] Likewise, but less crucially, the majority omits a Second Circuit decision distinguishing (and noting criticism of) *Thomas* and holding that a dog sniff of the door

Treating *Lewis* as an aside is striking, given that the very same factual distinction exists here. Indeed, given *Lewis*, there seems to be no circuit split at all as to dog sniffs of motel-room doors.

That said, I agree with the majority that there is *something* of a circuit split—*Whitaker* and *Thomas* held that dog sniffs of apartment doors are searches, while the Fourth and Eighth Circuits have adopted a categorical rule, per *Caballes* and *Place*, that a dog sniff never violates a reasonable expectation of privacy because it can detect only contraband. *See United States v. Johnson*, 148 F.4th 287, 292–93 (4th Cir. 2025), *petition for cert. filed* Jan. 2, 2026 (No. 25-774); *United States v. Scott*, 610 F.3d 1009, 1016 (8th Cir. 2010).

However, I don't agree with the majority that there's any uncertainty as to which direction our case law points on this split. As the majority acknowledges, "[o]ur cases seem to speak of *Caballes*, *Jacobsen*, and *Place* as establishing a categorical rule 'that dog sniffs are not searches within the meaning of the Fourth Amendment.'" Maj. 27 (cleaned up) (quoting *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003)). *Ramirez* presents an excellent example. There, we directly confronted the fact that dog sniffs are "fallible" and nevertheless noted that in "general[,] . . . dog sniffs are not searches within the meaning of the Fourth Amendment." *Ramirez*, 342 F.3d at 1213 (cleaned up). Likewise, in *United States v. Morales-Zamora*, we held that no search

---

of a storage unit was not a search. *See United States v. McKenzie*, 13 F.4th 223, 232–35 (2d Cir. 2021).

occurred when dog sniffs "were made of the exterior of the defendants' vehicles and did not invade their homes or bodily integrity," even if the defendants had some expectation of privacy in their vehicles. 914 F.2d 200, 205 (10th Cir. 1990). Both cases articulate the principle that dog sniffs that do not invade or intrude on constitutionally protected space are not searches, even if they do not directly hold as much.

The majority nevertheless reads some Tenth Circuit case law to suggest that there is *no* categorical rule. But the two cases the majority points to predated *Caballes*'s application of *Place* and *Jacobsen*, and neither case opined one way or the other on the existence of a categorical rule regarding whether dog sniffs are searches. *See United States v. Garcia*, 42 F.3d 604, 606 (10th Cir. 1994) (holding that dog sniff of train's luggage compartment wasn't a search); *United States v. Stone*, 866 F.2d 359, 363 n.1 (10th Cir. 1989) (holding that dog sniff during traffic stop wasn't a search). *Garcia* merely rejected the defendant's arguments seeking to distinguish *Place* on the basis that the luggage car was nonpublic and distinguished the Second Circuit's opinion in *Thomas* as justified by the privacy interests in an apartment hallway. 42 F.3d at 605–06 (10th Cir. 1994). *Stone* said even less, arguably presaging *Caballes* itself by holding that a dog sniff of a vehicle during a traffic stop wasn't a search (and distinguishing *Thomas* in a footnote). 866 F.2d at 363 & n.1. These cases are consistent with *Ramirez* and *Morales-Zamora*. And the majority's distinction—that *Garcia* and *Stone* indicate that the public setting of a sniff informs whether it is a search—is just another way of saying that a dog sniff is not a search when it does not intrude on a constitutionally protected space, which a public space usually isn't.

8

I would therefore follow both the obvious direction of our case law and the holdings of the Fourth and Eighth Circuits. In my view, doing so conforms to Supreme Court precedent. Despite the differing contexts of *Caballes* (traffic stop), *Jacobsen* (onsite chemical test), and *Place* (airline luggage), the Court has adhered to the proposition "that any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Caballes*, 543 U.S. at 408 (quoting *Jacobsen*, 466 U.S. at 123). That proposition applies with equal force here, where we consider a dog sniff of a motel-room door. That sniff did not violate reasonable expectations of privacy because Nemeth had no reasonable expectation of privacy in possessing the illegal drugs the dog was trained to sniff out. So the dog sniff was not a search unless it intruded on a constitutionally protected space—and Nemeth has disavowed any argument that it did.

In sum, I would conclude that Nemeth adequately presented his *Katz* argument to the district court and affirm the order denying suppression on the merits. For these reasons, I concur in part.